UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Melissa Jenks, Individually
and as g/n/f of Roderick Jenks</u>

   v.                                       Civil No. 09-cv-205-JD
                                               Opinion No. 2011 DNH 127

<u>New Hampshire Motor
Speedway, Inc., et al.</u>

   v.

<u>Textron Financial Corporation
and A.B.L. Inc.</u>

O R D E R

Melissa Jenks, as the guardian and next friend of her husband, Roderick Jenks, and on her own behalf, sued New Hampshire Motor Speedway, Breann Thompson, and Textron, Inc., alleging negligence claims against Thompson and the Speedway and product liability claims against Textron. Textron brought cross claims against Thompson and the Speedway for contribution and indemnification, and Thompson and the Speedway brought third-party claims for contribution and indemnification against Textron Financial Corporation and A.B.L. Inc. Textron Financial Corporation moves for summary judgment on the third-party claims against it.

Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

Background

In July of 2006, Roderick and Melissa Jenks worked at the Speedway in exchange for a contribution to a charity of their choice. On Sunday, July 16, 2006, Mr. Jenks arrived at the Speedway early in the morning to begin work. As he was walking in the racetrack infield with another volunteer, they saw Thompson, a Speedway employee, driving a golf cart toward them,

and they flagged her down to ask for a ride.  Thompson agreed to give them a ride to the other side of the infield.

The golf cart had only two seats so Mr. Jenks rode in the rear of the cart, where golf clubs are typically carried.  Thompson drove a short distance and then swerved suddenly to avoid hitting a person in the roadway.  Mr. Jenks fell off the back of the golf cart, suffering serious head injuries.

The golf cart that Thompson was driving was manufactured by Textron Inc.  Textron Financial Corporation ("TFC") provides financing programs for products, such as golf carts, that are manufactured by Textron Inc, which is TFC's parent company.  TFC provided financing to A.B.L., Inc., through a finance lease, to purchase the golf carts from Textron.  A.B.L. then leased the golf cart Thompson was driving at the time of the accident to the Speedway.

Melissa Jenks brought suit against Thompson, the Speedway, and Textron Inc. under diversity jurisdiction, 28 U.S.C. § 1332.  The defendants' cross claims and third-party claims are also based on diversity jurisdiction.  The parties agree that New Hampshire law applies to the third-party claims against TFC.

Discussion

In the third-party complaint, Thompson and the Speedway allege that if Melissa Jenks recovers a judgment against them, TFC and A.B.L. are liable to them for contribution and indemnification. Thompson and the Speedway allege, pursuant to a strict product liability theory, that the golf cart was defective and unreasonably dangerous, which caused the accident that injured Roderick Jenks. TFC moves for summary judgment on the claims against it on the grounds that the contribution claim is premature pursuant to New Hampshire Revised Statutes Annotated ("RSA") § 507:7-g(IV)(c) and that as a financial lessor, it is not subject to strict product liability.

A.  Contribution Claim

Under New Hampshire law, contribution claims generally must be resolved in a separate action after judgment is rendered against a defendant. RSA 507:7-g(IV). Under the statute, a defendant can bring a third-party claim for contribution as part of the plaintiff's suit only if the plaintiff agrees. RSA 507:7-g(IV)(c). The application of RSA 507:7-g has been handled differently by several judges in this court. See McNeil v. Nissan Motor Co., 365 F. Supp. 2d 206, 213-14 (D.N.H. 2005); Z.B. ex rel. Kilmer v. Ammonoosuc Cmty. Health Servs., Inc., 225

F.R.D. 60, 61-62 (D. Me. 2004) (discussing decisions in the District of New Hampshire).

TFC asserts that the contribution claim is premature because judgment has not been entered on Jenks's claims.  In response, Thompson and the Speedway point out that Jenks assented to their motion for leave to file the third-party complaint.  They contend that Jenks's assent satisfies the requirement of RSA 507:7-g(IV)(c).  TFC does not dispute that Jenks agreed to have the contribution claim as part of the principal action.

Because it is undisputed that Jenks agreed to have the contribution claim brought in the principal action, it is unnecessary to decide whether RSA 507:7-g provides the governing standard.

B.  <u>Strict Liability</u>

New Hampshire recognizes strict liability claims as provided in section 402A of the Restatement (Second) of Torts.  <u>Kelleher v. Marvin Lumber & Cedar Co.</u>, 152 N.H. 813, 831 (2005).  "Under the doctrine of strict liability, one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer."  <u>Id.</u> at 824 (internal quotation marks omitted).  In addition, the seller

of the product must be in the business of selling such products. Brescia v. Great Road Realty Trust, 117 N.H. 154, 157 (1977).

TFC contends that it cannot be strictly liable for a defect in the golf cart because it did not sell the golf cart and is not in the business of selling golf carts. TFC provides the affidavit of Robert L. Hotaling, Jr., Senior Vice President of Operations at TFC, to explain the transaction between TFC and A.B.L. Hotaling states that TFC provided financing to A.B.L. to purchase golf carts from Textron, that the arrangement was a finance lease, that Textron supplied the carts, and that TFC is not in the business of selecting, supplying, or manufacturing golf carts. Thompson and the Speedway argue that TFC is in the business of leasing golf carts and should be deemed to be a seller for purposes of strict liability.

In Brescia, the owner of a construction company formed a land trust that rented property to the construction company. 117 N.H. at 155-56. At a time when the construction company was low on cash, the trust bought a crane that it then leased to the construction company. Id. at 156. The New Hampshire Supreme Court concluded that the trust could not be held strictly liable for injuries caused by the crane because the trust was not in the business of supplying cranes to the general public and instead

the lease was merely a business arrangement between the trust and the construction company.  Id. at 157.

TFC's circumstances are different from those discussed in Brescia.  TFC provides financing arrangements through finance leases to members of the general public who are buying products from TFC's parent company, Textron.  As such, TFC is in the business of supplying financing for the purchase of Textron's products.  The issue then is whether a company that provides financing for the purchase of products from another company can be held strictly liable for injuries caused by the financed products.

Other courts that have considered the application of strict liability to finance lessors have concluded that providing financing does not provide a basis for strict liability.  See Wright v. Newman, 735 F.2d 1073, 1078 (8th Cir. 1984); Abco Metals Corp. v. Equico Lessors, Inc., 721 F.2d 583, 585-86 (7th Cir. 1983); Massey v. Cassens & Sons, Inc., 2007 WL 2710490, at *5 (S.D. Ill. Sept. 13, 2007); Arriaga v. CitiCaptial Comm. Corp., 85 Cal.Rptr.3d 143, 152-53 (Cal. App. 2008); Draleau v. Center Capital Corp., 732 N.E.2d 929, 933 (Mass. App. Ct. 2000).

In Wright, the Eighth Circuit was guided by the policy underlying strict liability as expressed in the Restatement (Second) of Torts § 402A, comment c, "that as between the

consuming public and those responsible for placing a defective product on the market, the latter should bear the burden of any attendant losses." 735 F.2d at 1077. The strict liability policy is supported by the understanding that the seller of a product "is in a position through inspection and pressure on the manufacturer to control the flow of dangerous products into the market [and] . . . is also generally better able to bear and distribute the costs resulting from injury due to a defective product." Id. The court concluded that because Ford Motor Credit Company was in the business of financing the purchase of Ford products from dealers, it was in a different position than commercial entities that were responsible for distributing the products. Id. at 1078. As a financier, the court concluded, Ford Motor Credit Company was not in the distribution chain that supplies the product to the public and therefore could not be held strictly liable. Id.

 The Seventh Circuit also focused on the relationship between the parties to determine whether Equico could be held strictly liable for a defective wire chopper that Equico purchased and leased to Abco. Abco, 721 F.2d at 585. The court noted that Equico had no part in the production, marketing, or distribution of the wire chopper and that instead Equico's role was to provide financing. Id. As such, the court concluded that Equico was not

8

part of the distribution chain and could not be held strictly liable. Id. at 586.

In Arriaga, the California court considered whether a finance lessor of a glue spreader could be held strictly liable for injuries to the plaintiff. The court concluded that even if the finance role could be deemed to be a part of the chain of distribution, policy considerations did not support the application of strict liability. 85 Cal.Rptr.3d at 152.

The reasoning in the cited cases is persuasive here. Thompson and the Speedway do not dispute that TFC's only role in this case was to provide financing for A.B.L. to purchase the golf carts. As such, TFC remained outside the chain of distribution and did not engage in the business of supplying the carts to the public. Therefore, the doctrine of strict liability does not apply to TFC.

<u>Conclusion</u>

For the foregoing reasons, TFC's motion for summary judgment (document no. 96) is granted. TFC is entitled to judgment in its favor on the contribution and indemnification claims (Counts I and II) in the third-party complaint (document no. 66).

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

August 17, 2011

cc:  R. Matthew Cairns, Esquire
     James M. Campbell, Esquire
     R. Peter Decato, Esquire
     Dona Feeney, Esquire
     Mark V. Franco, Esquire
     Neil A. Goldberg, Esquire
     John A.K. Grunert, Esquire
     Daniel R. Mawhinney, Esquire
     David S. Osterman, Esquire
     Christopher B. Parkerson, Esquire
     Michael D. Shalhoub, Esquire