UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Melissa Jenks, Individually
and as g/n/f of Roderick Jenks

   v.                                     Civil No. 09-cv-205-JD
                                        Opinion No. 2012 DNH 006

New Hampshire Motor Speedway, et al.

   v.

Textron Financial Corporation
and A.B.L. Inc.


O R D E R

Melissa Jenks, as the guardian and next friend of her husband, Roderick Jenks, and on her own behalf, sued New Hampshire Motor Speedway, Breann Thompson, and Textron, Inc., alleging negligence claims against Thompson and the Speedway and product liability claims against Textron.  Textron brought cross claims against Thompson and the Speedway for contribution and indemnification, and Thompson and the Speedway brought third-party claims against Textron Financial Corporation and A.B.L. Inc.[1]  Jenks moves for summary judgment on the defendants'

---

[1]Summary judgment was granted in Textron Financial Corporation's favor on the third-party claims against it.

affirmative defenses of comparative fault and on vicarious liability.

## Standard of Review

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court considers the undisputed facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Avery v. Hughes, 661 F.3d 690, 693 (1st Cir. 2011).

## Background

Roderick Jenks worked at the New Hampshire Motor Speedway on July 16, 2006, as part of a program in which the Speedway donates money to a charity in exchange for the work done by individuals who volunteer to participate. Jenks worked that day on behalf of a nonprofit organization called Fishin' for Kids. Jenks, along with several other Fishin' for Kids workers, was assigned to work providing security in the track infield.

After receiving their assignments, Jenks and his fellow Fishin' for Kids workers, Bruce Ottman, Marc MacAlpine, and John Horgan, began walking toward their work assignment at the Busch garage.  Jenks and MacAlpine stopped to use the restroom while Ottman and Horgan continued toward the garage.  As Jenks and MacAlpine left the restroom, a Speedway employee, Breann Thompson, drove by on a golf car.[2]  MacAlpine asked Thompson if he and Jenks could have a ride, and she agreed.

The golf car had seats for two people in front and a platform on the back, where golf bags would be carried.  MacAlpine got into the seat next to Thompson.  Jenks climbed onto the platform on the back of the car and rode standing up.

As the golf car approached Horgan and Ottman on the way toward to the garage, Horgan stuck out his leg, lifted his pant leg, and put his thumb up, pretending to hitchhike.  Thompson swerved away from Horgan.  Jenks fell off of the back of the car and hit his head on the pavement.

Because of Jenks's injuries in the fall, his wife, Melissa Jenks, serves as his guardian and next friend for purposes of this case.  Melissa also brings a claim of loss of consortium on her own behalf.  Therefore, Melissa Jenks, serving as the

---

[2]The parties all refer to the vehicle as a "golf car" not a "golf cart."

plaintiff in this case on behalf of Rod and herself, is referred to as "Jenks," while her husband is referred to as "Rod."

## Discussion

Jenks alleges that the Speedway and Thompson were negligent, which caused the injury to Rod. She brings product liability claims against Textron, alleging that the golf car, which was designed and manufactured by Textron, was unreasonably dangerous and lacked warnings that it was dangerous to operate the car with a passenger riding on the back. Jenks seeks summary judgment on the defendants' affirmative defenses asserting comparative fault and misconduct by Rod and that the Speedway is vicariously liable for the negligence of Rod's fellow workers, MacAlpine and Horgan.

### I. Affirmative Defenses

Thompson and the Speedway asserted an affirmative defense that Rod's injuries were caused at least in part by his own negligence. Textron asserted an affirmative defense that Rod's misconduct contributed to cause his injuries.

#### A. Comparative Fault - Speedway and Thompson

Under New Hampshire law, which governs the claims in this case, a plaintiff's fault that contributed to cause his injuries

4

does not bar his claim, as long as the plaintiff's fault is less than the defendants' fault. RSA 507:7-d. The recoverable damages, however, are reduced by the plaintiff's proportion of the fault, if any. Id.

A comparative fault defense "is triggered by a plaintiff's negligence." Broughton v. Proulx, 152 N.H. 549, 558 (2005). "A plaintiff's negligence involves a breach of the duty to care for oneself" that is not obviated by others' obligations to use due care. Id. "The right to rely upon the care of another is only one of the circumstances in the light of which the duty to exercise due care for oneself is to be determined, because full reliance may not be placed upon another's care when it is unreasonable to do so." Id. A defendant asserting the defense of comparative fault bears the burden of proving "the existence or amount of fault attributable" to the plaintiff. RSA 507:7-d.

Jenks asserts that the defendants lack any evidence of Rod's fault in causing his fall and, therefore, that the jury could find comparative fault only based on conjecture and speculation. The Speedway and Thompson contend that Rod's decision to ride standing on the back of the golf car was negligent and contributed to cause his fall. They also provide evidence that Rod did not ask Thompson to drive slowly, that he was "hooting

and hollering," and that he may not have been holding on with both hands.

Jenks cites two cases in which the court granted the plaintiff summary judgment on comparative fault defenses, Copp v. Atwood, 2005 WL 139180 (D.N.H. Jan. 24, 2005), and Bartlett v. Mutual Pharm. Co., 731 F. Supp. 2d 184 (D.N.H. 2010). As the defendants explain, neither case is pertinent here. Jenks also analogizes this case to an accident case decided in 1930, Piatek v. Swindell, 84 N.H. 402, 151 A. 262 (1930), which is not persuasive.[3]

In Copp, the court concluded that under the bizarre circumstances of that accident, where the defendant abruptly stopped on I-89, turned across two lanes of traffic, crossed the median, and drove into Copp, Copp's speed was not a contributing factor in the accident. 2005 WL 139180, at *3. In this case, Rod chose to ride on the back of the golf car under circumstances that are disputed and fell when the car swerved. Unlike the situation in Copp, the circumstances that led to Rod's fall and

---

[3]Jenks further relies on Nepstad v. Randall, 152 N.W. 2d 383 (S.D. 1967), which considered the doctrine of assumption of the risk under South Dakota law in the context of a golf cart accident. The court does not find the analysis persuasive in the context of the circumstances and legal standards in this case.

his injuries were not so far beyond his control and expectation that comparative fault is not an issue.

In Bartlett, the plaintiff asserted product liability claims based on side effects she experienced caused by a medication manufactured by the defendant.  731 F. Supp. 2d at 186-87.  The defendant asserted that the plaintiff was negligent in continuing to take the medication after experiencing some symptoms, but the defendant lacked expert opinion evidence that earlier cessation would have made her injuries less severe.  Id. at 188.  The court ruled that without expert opinion evidence the defendant could not show that the plaintiff's actions contributed to cause her injuries.  Id. at 188-89.  Here, Rod has not shown that missing expert opinion is necessary to show a causal link between Rod's decision to ride on the back of the car, including his actions while riding, and his fall.

Jenks further asserts that Rod had no reason to foresee the danger of falling, relying on Piatek.  Piatek involved the application of contributory fault in a traffic accident that occurred more than eighty years ago.  There, the plaintiff was sitting on the floor of the passenger side of a pickup truck with his leg extending to the running board, and the defendant, who was speeding, hit the truck at an intersection.  151 A. at 263.  The court noted the obligation to take proper precautions against

dangers that are likely to be encountered and that it was not careless to encounter danger that could not anticipated. Id. at 263-64. The court also stated that "[i]t is not negligent for one to assume that another will do his duty when there is no occasion to assume otherwise . . . ." Id. at 264. The court concluded that the plaintiff was not careless because he had no reason to anticipate the defendant's excessive speed. Id.

Piatek is inapposite to this case. Under the more modern version of comparative fault, as is explained above, "[t]he right to rely upon the care of another is only one of the circumstances in the light of which the duty to exercise due care for oneself is to be determined, because full reliance may not be placed upon another's care when it is unreasonable to do so." Broughton, 152 N.H. at 558. The facts in this case are disputed as to whether Rod should have anticipated the danger of riding on the back of the golf car and whether he took proper precautions while doing so.

Contrary to Jenks's argument, the defendants presented evidence that Rod's choice to ride on the back of the golf car and his actions while riding may have contributed to cause his fall which resulted in his injuries. Whether Rod should have anticipated the danger of riding on the back is disputed. Jenks has not shown that she is entitled to judgment as a matter of law

on the comparative fault defense asserted by the Speedway and Thompson.

### B. Misconduct - Textron

Under New Hampshire law, a comparative fault defense also applies in claims of strict product liability, although the defense in that context is known as plaintiff misconduct or misuse of the product. Thibault v. Sears, Roebuck & Co., 118 N.H. 802, 810-13 (1978); see also Chellman v. Saab-Scania AB, 138 N.H. 73, 81 (1993); Kathios v. Gen. Motors Corp., 862 N.H. 944, 948 (1988); McNeil v. Nissan Motor Co., Ltd., 365 F. Supp. 2d 206, 210-11 (D.N.H. 2005). Because strict liability does not consider negligence, however, the defense applies for purposes of strict liability to "comparative causation" for purposes of assessing damages. Bohan v. Ritzo, 141 N.H. 210, 214 (1996). The foreseeability of a plaintiff's misuse of the product or misconduct does not bar the defendant from relying on the defense. Cyr v. J.I. Case Co., 139 N.H. 193, 208 (1994).

Jenks makes the same argument against Textron's defense as she makes against the defense used by the Speedway and Thompson, without distinguishing between the nature of the defenses. Textron raises Rod's decision to ride on the back of the golf car and his actions while riding as evidence of his misconduct or

9

misuse of the product.  Textron notes that the cause of the accident was not limited to Thompson's driving, as Jenks suggests, because if Rod had not ridden on the back, he would not have fallen off.  Therefore, for the reasons explained above, Jenks has not shown that she is entitled to summary judgment on Textron's affirmative defense of product misuse or Rod's misconduct.

II.  Vicarious Liability

Jenks seeks a ruling on summary judgment that the Speedway is vicariously liable for any negligence of Rod's fellow workers, Marc MacAlpine and John Horgan.  Jenks does not allege claims against either.  In response, the Speedway states that it is not asserting any negligence by MacAlpine, making the issue moot as to him.  The Speedway contends that it is not vicariously liable for Horgan's actions, to the extent his actions contributed to cause the accident, because he was not acting on behalf of the Speedway when he pretended to hitchhike as Thompson drove toward him.

"Under the doctrine of respondeat superior, an employer may be held vicariously responsible for the tortious acts of its employee if the employee was acting within the scope of his or her employment when his or her tortious act injured the

plaintiff." Tessier v. Rockefeller, 162 N.H. 324, 2011 WL 4133840, at *12 (Sept. 15, 2011) (internal quotation marks omitted). "Conduct falls within the scope of employment if: (1) it is of the kind the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is actuated, at least in part, by a purpose to serve the employer." Id. (internal quotation marks omitted). Conduct is not for the purpose of serving the employer if it "is motivated solely by individual desires and serves no purpose of the employer." Faragher v. City of Boca Raton, 524 U.S. 775, 794 (1998).

For purposes of summary judgment, the Speedway does not contest that Horgan would be deemed to be an employee at the time of the accident. Horgan's actions that are the subject of potential liability are that he stuck his leg out, pulled up his pant leg, and pretended to hitchhike as the golf car approached him.[4] The Speedway contends that in taking those actions, Horgan was engaging in a classic "frolic" for the benefit of himself and his friends and was not acting with a purpose to serve the Speedway.

---

[4] Horgan described his conduct as a satire on a Three Stooges' routine.

Jenks does not address the requirement for vicarious liability that Horgan must have been acting with a purpose to benefit the Speedway in her motion and memorandum.  The Speedway points to evidence that taken in the light most favorable to it could support the argument that Horgan was not acting on its behalf when he pretended to hitchhike in front of the oncoming golf car.  In her reply, Jenks argues that Horgan may have had a mixed motive and argues that joking on the job does not take the conduct outside the scope of employment.

In Porter v. City of Manchester, 155 N.H. 149, 155 (2007), the court noted that conduct done at least in part to serve the employer falls within the employee's scope of employment.  As a result, an employee with a mixed motivation, both to serve her own interests and those of her employer, still acts within the scope of her employment for purposes of vicarious liability.  Id.  The court held that conflicting evidence about the employee's motivation precludes summary judgment.  Id.

Here, the only evidence pertaining to Horgan's motivation in pretending to hitchhike suggests that he was simply joking with his friends.  Although joking and pranks at work may fall within the scope of employment in some circumstances and for some purposes, see Maltais v. Equitable Life Assurance Society of the U.S., 93 N.H. 237 (1944), but see XL Ins. Am., Inc. v. Ortiz, 673

F. Supp. 2d 1331, 1343 n.11 (S.D. Fla. 2009), Jenks has not established that to be true here.  Therefore, the record would not support judgment as a matter of law that Horgan intended to serve the interests of the Speedway, at least in part, and was acting within the scope of his employment.

    Jenks has not shown that she is entitled to summary judgment on her claim that the Speedway is vicariously liable for the conduct of MacAlpine and Horgan.

## Conclusion

    For the foregoing reasons, the plaintiff's motion for summary judgment (document no. 112) is denied.

    SO ORDERED.

                                /s/ Joseph A. DiClerico, Jr.
                                Joseph A. DiClerico, Jr.
                                United States District Judge

January 10, 2012

cc:  R. Matthew Cairns, Esquire
     James M. Campbell, Esquire
     R. Peter Decato, Esquire
     Dona Feeney, Esquire
     Mark V. Franco, Esquire
     Neil A. Goldberg, Esquire
     John A.K. Grunert, Esquire
     Daniel R. Mawhinney, Esquire
     David S. Osterman, Esquire
     Christopher B. Parkerson, Esquire
     Michael D. Shalhoub, Esquire
     William A. Whitten, Esquire