UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Melissa Jenks, Individually
and as  G/N/F of Roderick Jenks

          v.                        Civil No. 09-cv-205-JD
                                    Opinion No. 2012 DNH 009

New Hampshire Motor Speedway, et al.

          v.

A.B.L., Inc.


                      O R D E R


     Melissa Jenks, as the guardian and next friend of her
husband, Roderick Jenks, and on her own behalf, sued New
Hampshire Motor Speedway, Breann Thompson, and Textron, Inc.,
alleging negligence claims against Thompson and the Speedway and
product liability claims against Textron.  Textron brought cross
claims against the Speedway and Thompson for contribution and
indemnification, and the Speedway and Thompson brought third-
party claims against Textron Financial Corporation and A.B.L.,
Inc. ("ABL").[1]  ABL moves for summary judgment on the third-party
claims brought by the Speedway and Thompson.

_____

     [1]Summary judgment was granted in Textron Financial
Corporation's favor on the third-party claims against it.

Standard of Review

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court considers the undisputed facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party.  Avery v. Hughes, 661 F.3d 690, 693 (1st Cir. 2011).

Background

Roderick Jenks worked at the New Hampshire Motor Speedway on July 16, 2006, as part of a program in which the Speedway donates money to a charity in exchange for work done by individuals who volunteer to participate.  Jenks, along with several others, was assigned to provide security in the track infield.  After receiving their assignments, Jenks walked with a fellow worker, Marc MacAlpine, toward their assigned area.

Breann Thompson, a Speedway employee, drove by Jenks and MacAlpine in a golf car.  MacAlpine asked Thompson to give them a

ride, and she agreed.  MacAlpine got into the passenger seat next to Thompson, and Jenks rode on the back of the car in an area for carrying golf bags.  When Thompson swerved, Jenks fell off the car, hit his head, and was seriously injured.

The golf car driven by Thompson was an EZ-Go TXT model that was manufactured by Textron, Inc.  ABL leased the golf car, along with many others, to the Speedway for the racing event.  ABL was in the business of selling, leasing, and servicing golf cars and had leased golf cars to the Speedway for other events.

Jenks brought negligence claims against the Speedway and Thompson.  In their third-party complaint, the Speedway and Thompson allege claims for contribution and indemnity against ABL.

## Discussion

ABL moves for summary judgment on the contribution and indemnity claims brought against it.  In support, ABL contends that strict liability does not apply to lessors of products, that the Speedway and Thompson cannot prove a failure to warn claim without expert testimony to support ABL's liability, and that the danger of riding on the back of the car was open and obvious which precludes strict liability.  The Speedway and Thompson oppose the motion.

A.  Strict Liability

     In the third-party complaint, the Speedway and Thompson
allege that they are entitled to contribution from ABL, as a
joint tortfeasor, for any judgment recovered by Jenks against
them and that they are entitled to indemnity from ABL because any
liability by them to Jenks is derivative of ABL's fault.  The
Speedway and Thompson do not allege what theory of liability they
assert as to ABL.  For purposes of its motion for summary
judgment, ABL assumes that the Speedway and Thompson would assert
a strict liability claim of failure to warn or inadequate warning
against it.  In their objection, the Speedway and Thompson accept
that interpretation of their claims and assert the viability of a
failure to warn claim against ABL.

     New Hampshire follows the Restatement (Second) of Torts, §
402A, for strict liability.  Kelleher v. Marvin Lumber & Cedar
Co., 152 N.H. 813, 824 (2005).  "Under the doctrine of strict
liability, one who sells any product in a defective condition
unreasonably dangerous to the user or consumer or to his property
is subject to liability for physical harm thereby caused to the
ultimate user or consumer."  Id. (internal quotation marks
omitted).  "If the design of a product makes a warning necessary
to avoid an unreasonable risk of harm from a foreseeable use, the
lack of warning or an ineffective warning causes the product to

be defective and unreasonably dangerous."  <u>Chellman v. Saab-Scania AB</u>, 138 N.H. 73, 78 (1993).

ABL argues that strict liability is limited to sellers of products and, therefore, inapplicable to it because it leased the golf car to the Speedway.  The Speedway and Thompson urge the application of strict liability to ABL as a commercial lessor of golf cars.

The New Hampshire Supreme Court has not addressed the question of whether strict liability would apply to a commercial lessor in the business of leasing defective products.[2]  When applying state law under diversity jurisdiction, "[i]f the highest court has not spoken directly on the question at issue, [federal courts] predict how that court likely would decide the issue, looking to the relevant statutory language, analogous decisions of the state supreme court, decisions of the lower state courts, and other reliable sources of authority."  <u>Barton v. Clancy</u>, 632 F.3d 9, 17 (1st Cir. 2011).

In <u>Brescia v. Great Road Realty Trust</u>, 117 N.H. 154 (1977), the court considered whether a land trust, formed by the owner of a construction company, could be held strictly liable for a defect in a crane that the trust leased to the construction

---

[2]None of the parties has asked the court to certify the question to the New Hampshire Supreme Court.

company.  The court noted that "[t]he applicability of the doctrine in an action between a lessee and lessor is not well established."  Id. at 156.  The court also noted that strict liability under § 402A of the Restatement does not apply to one who only occasionally sells and is not in the business of selling the product and stated "to the extent the doctrine [of strict liability] is applicable to a lease arrangement, it would seem to be applicable only where the lease in question represents something more than business happenstance on the part of the lessor."  Id. at 157.  The court concluded that because the trust was not in the business of leasing cranes, strict liability did not apply.  Id.  The holding in Brescia does not preclude strict liability of a commercial lessor, which is in the business of leasing the product in question.

     The Restatement (Third) of Torts: Products Liability expands strict liability to include "other forms of commercial product distribution that are the functional equivalent of product sales."  Id. § 1, cmt.b.  "One otherwise distributes a product when, in a commercial transaction other than a sale, one provides the product to another either for use or consumption . . . .  Commerical nonsale product distributors include, but are not limited to, lessors . . . ."  Id. § 20(b).

6

The New Hampshire Supreme Court commonly relies on the Restatement, including the Restatement (Third) of Torts, when construing New Hampshire tort law.  See Goudreault v. Kleeman, 158 N.H. 236, 254 (2009); DeBenedetto v. CLD Consulting Engs., Inc., 153 N.H. 793, 798-99 (2006); Kelleher, 152 N.H. at 835 (Restatement (Third) of Torts: Products Liability § 21); Bielagus v. EMRE of N.H. Corp., 149 N.H. 635, 646 (2003) (Restatement (Third) of Torts: Products Liability § 12); Trull v. Volkswagen of Am., Inc., 145 N.H. 259, 263-67 (2000); but see Vautour v. Body Masters Sports Inds., Inc., 147 N.H. 150, 154-55 (rejecting alternative design requirement in Restatement (Third) of Torts: Products Liability § 2(b)).  This court has noted the change provided by the Restatement (Third) of Torts: Products Liability § 1.  See Warford v. Indus. Power Sys., Inc., 2008 WL 4642638, at *12 n.9 (D.N.H. Oct. 20, 2008).  As the Speedway and Thompson point out, other jurisdictions apply strict liability to commercial lessors who are in the business of leasing the allegedly defective product.  See, e.g., Whitaker v. T.J. Snow Co., 151 F.3d 661, 664 (7th Cir. 1998); Torres v. Goodyear Tire & Rubber Co., Inc., 901 F.2d 750, 753 (9th Cir. 1990); Wallace v. Busch Entm't Corp., 2011 WL 3607232, at *9 (S.D. Cal. Aug. 16, 2011); Am. Coach Lines of Orlando, Inc. v. N. Am. Bus Indus., Inc., 2011 WL 653524, at *28 (M.D. Fla. Feb. 14, 2011); Mullaney

v. Hilton Hotels Corp., 634 F. Supp. 2d 1130, 1139 (D. Hawaii 2009); Adeyinka v. Yankee Fiber Control, Inc., 564 F. Supp. 2d 265, 275 (S.D.N.Y. 2008); Brobbery v. Enter. Leasing Co. of Chicago, 935 N.E. 2d 1084, 1091 (Ill. App. 2010); Peterson v. Safway Steel Scaffolds Co., 400 N.W. 2d 909, 915 (S.D. 1987).

Based on the New Hampshire Supreme Court's past decisions in the area of strict product liability, the Restatement (Third) of Torts: Products Liability § 1 and § 20, and the trend in other jurisdictions, the New Hampshire Supreme Court is likely to extend strict product liability to commercial lessors of defective products. Therefore, ABL is not entitled to summary judgment based on its status as a commercial lessor.

B.   Expert Testimony to Support Product Liability Claim

ABL asserts that it is entitled to summary judgment because the Speedway and Thompson lack expert opinion evidence to prove a failure to warn claim against it. The basis for a failure to warn claim is that a danger inherent in the product required a warning to avoid an unreasonable risk of harm from a foreseeable use of the product. LeBlanc v. Am. Honda Motor Co., Inc., 141 N.H. 579, 585-86 (1997). A defendant in a product liability case is liable for failing to warn if "the lack of a warning or an

ineffective warning causes the product to be defective and unreasonably dangerous." <u>Chellman</u>, 138 N.H. at 78.

ABL concedes that the Speedway and Thompson have an expert witness, Dr. William J. Vigilante, who has provided opinions about the deficiencies of the warning Textron put on the golf car.  ABL contends, however, that Dr. Vigilante's opinions pertaining to Textron's obligations and failures do not apply to ABL.  The Speedway and Thompson respond by providing Dr. Vigilante's opinions that the golf car was defective due to deficient warnings when Textron sold the car to ABL.  The Speedway and Thompson contend that ABL's liability arises from the deficiency of the warning provided by Textron and ABL's failure to provide any additional warning on the car, despite knowing that people rode in the back of the golf cars.

As presented, the warning claim against ABL relies on Dr. Vigilante's opinions to show the deficiency of the warning, both as to Textron's failure to provide an adequate warning and to ABL's failure to add a warning.  The Speedway and Thompson rely on fact evidence pertaining to ABL's actions or lack of action to show that ABL failed to provide an adequate warning.

ABL has not shown that the Speedway and Thompson lack evidence to prove an essential part of their claim against ABL.

9

C.   <u>Open and Obvious Danger</u>

In the last part of its memorandum, ABL states that it "incorporates and adopts by reference the argument advanced by Textron in its memorandum of law that the danger associated with Mr. Jenks riding while standing and holding on the back of the moving golf car on a cement road, was open and obvious as a matter of law."  Mem. doc. no. 111 at 10.  The court will not address an argument made by Textron in support of its own motion for summary judgment in the context of ABL's motion for summary judgment.  If ABL intends to join in that part of Textron's motion, ABL must file an appropriate motion to that effect.

<u>Conclusion</u>

For the foregoing reasons, ABL's motion for summary judgment (document no. 111) is denied.

If ABL intends to join in part of Textron's motion for summary judgment, ABL shall file a motion to join **on or before January 20, 2012.**


SO ORDERED.

_Joseph A. DiClerico, Jr._
Joseph A. DiClerico, Jr.
United States District Judge

January 11, 2012

cc:  R. Matthew Cairns, Esquire
     James M. Campbell, Esquire
     R. Peter Decato, Esquire
     Dona Feeney, Esquire
     Mark V. Franco, Esquire
     Neil A. Goldberg, Esquire
     John A.K. Grunert, Esquire
     Daniel R. Mawhinney, Esquire
     David S. Osterman, Esquire
     Christopher B. Parkerson, Esquire
     Michael D. Shalhoub, Esquire
     William A. Whitten, Esquire