UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Melissa Jenks, Individually
and as g/n/f of Roderick Jenks</u>

   v.                                   Civil No. 09-cv-205-JD
                                      Opinion No. 2012 DNH 027

<u>New Hampshire Motor Speedway,
Breann Thompson, and Textron, Inc.</u>

   v.

<u>A.B.L, Inc.</u>

O R D E R

Melissa Jenks, as the guardian and next friend of her husband, Roderick Jenks, and on her own behalf, sued New Hampshire Motor Speedway, Breann Thompson, and Textron, Inc., alleging negligence claims against Thompson and the Speedway and product liability claims against Textron. Textron brought cross claims against the Speedway and Thompson for contribution and indemnification. The Speedway and Thompson brought cross claims against Textron for contribution and indemnification and third-party claims against Textron Financial Corporation and A.B.L., Inc.[1] Textron moves to preclude the use of National Electronic

---

[1] Summary judgment was granted in Textron Financial Corporation's favor on the third-party claims against it.

Injury Surveillance System ("NEISS") reports. Jenks, the Speedway, and Thompson object to Textron's motion.

Background

Roderick Jenks was injured while working at the New Hampshire Motor Speedway on July 16, 2006. The accident occurred when Jenks and a fellow worker rode in a golf car driven by Breann Thompson, a Speedway employee. Jenks rode on the back of the golf car in an area for carrying golf bags. When Thompson swerved, Jenks fell off the car, hit his head, and was seriously injured. The golf car driven by Thompson was an E-Z-GO model that was manufactured by Textron, Inc.

In support of her claim against Textron, Jenks retained Dr. Lara B. McKenzie as an expert witness. Dr. McKenzie has a doctoral degree in Public Health Policy and Management from Johns Hopkins University. She works at the Nationwide Children's Hospital Center for Injury Research and Policy in Ohio. Dr. McKenzie was an author of a peer-reviewed article, published in 2008, that is titled "Golf Car Related Injuries in the U.S.," and she reviewed data from the NEISS during her research for the article.

The Speedway and Thompson retained Dr. Gerald McGwin, Jr. as an expert witness in the field of injury epidemiology. As part

of his work on this case, Dr. McGwin was asked to review the NEISS database to determine whether there were reported injuries between 1991 and 2009 that were associated with falling off the back of golf cars.

NEISS is a database that is compiled and maintained by the Consumer Product Safety Commission. The information comes from approximately 100 hospitals that maintain twenty-four hour emergency rooms. The reporting hospitals are selected based on geographic location and the demographics of their service areas to reflect the population of the United States as a whole.

Information is transmitted to NEISS by "coders" who review emergency room records. The coders provide the patient's age, gender, race, injury diagnosis, and body part injured and also indicate the product involved in the injury and state the treatment the patient received. In addition, the coders write a brief summary of the incident as part of the report to NEISS. Golf cars have a specific product code in the NEISS database. Each reported incident is assigned statistical weight that is used to estimate the magnitude of a particular problem on a nationwide basis.

In preparing reports for this case, Dr. McKenzie reviewed NEISS data on golf car injuries from 1990 through 2006. Dr. McGwin reviewed data from 1991 to 2009. After reviewing the

NEISS database, Dr. McKenzie found that golf car related injuries had increased significantly since 1990 and noted that the database under reported the actual number of golf car related injuries because fatalities that did not involve emergency room visits were not reported. Dr. McKenzie found that the weighted data showed 1,697 emergency room visits due to falls from the back of golf cars. Dr. McGwin found a weighted number of 1,869 injuries associated with falls from the back of golf cars between 1991 and 2009.

## Discussion

Textron contends that the NEISS data about golf car injuries is inadmissible hearsay and unreliable as the basis for expert opinion. Textron also contends that the NEISS data and the opinions based on it are irrelevant and unfairly prejudicial. Jenks, Thompson, and the Speedway object, arguing that the NEISS data is not hearsay and that the data and the opinions based on it are reliable, relevant, and admissible.

A.  Hearsay

Textron contends that the NEISS data about golf car injuries is inadmissible hearsay because the database is a compilation of out-of-court statements offered to prove the truth of the matter

4

asserted.  Specifically, Textron asserts that the database is derived from a patient's "self-serving account of an accident to a doctor or nurse" or the report of someone who accompanied the patient to the emergency room, that the report is summarized by a medical provider into a medical record, and that the medical record is then paraphrased by a coder into the NEISS database. Jenks contends that the NEISS database falls within the exception to hearsay for public records, and the Speedway and Thompson also argue that the database information is not hearsay.

1. Rule 803(8)

Rule 803(8) provides, in pertinent part, that a public record is not excluded by the rule against hearsay if it is "[a] record or statement of a public office [and] it sets out . . . factual findings from a legally authorized investigation . . . and [] neither the source of information nor other circumstances indicate a lack of trustworthiness."

The Consumer Product Safety Act requires the Consumer Product Safety Commission ("CPSC") "to collect, investigate, analyze, and disseminate injury data, and information, relating to the causes and prevention of death, injury, and illness associated with consumer products."  15 U.S.C. § 2054(a)(1).  The NEISS is the mechanism through which the CPSC complies with

§ 2054.  Southland Mower Co. v. Consumer Prod. Safety Comm'n, 619 F.2d 499, 510 n.24 (5th Cir. 1980); United States v. Gen. Motors Corp., 561 F.2d 923, 935 n.57 (D.C. Cir. 1977).  Therefore, the NEISS database appears to satisfy the requirements for a public record within the meaning of Rule 803(8).  See, e.g., Trull v. Volkswagen of Am., Inc., 187 F.3d 88, 97 (1st Cir. 1999).

For the exception provided by Rule 803(8) to apply, however, the public record also must be trustworthy.  Fed. R. Evid. 803(8)(B).  "'The burden is on the party challenging the validity of an official report to show that it is untrustworthy.'"  Taylor v. Erna, 2009 WL 2146675, at *8 (D. Mass. July 14, 2009) (quoting Baker v. Elcona Homes Corp., 588 F.2d 551, 556 (6th Cir. 1978)).

Dr. McKenzie testified at her deposition that the NEISS database is "the gold standard for consumer product-related injuries and it's the best surveillance system out there to look at this."  She represented that the NEISS database is used by Center for Disease Control centers and other trauma centers, as well as experts in the field of consumer product safety.  Dr. McGwin explained the NEISS database in his expert report and noted that it is used by government agencies, manufacturers, researchers, lawyers, and the general public.

Textron contends, nevertheless, that the NEISS database is inherently unreliable because the information is transferred from

a patient to a medical provider and then to a coder who enters the information in the database in summary form.[2]  As is noted above, the CPSC developed the NEISS database and uses it to monitor the safety of consumer products, which provides persuasive authority that the NEISS database is reliable to show the number of injuries related to certain products.[3]  See Southland Mower, 619 F.2d at 510 n.24; ASG Indus., Inc. v. Consumer Prod. Safety Comm'n, 593 F.2d 1323, 1326 n.3 (D.C. Cir. 1979); Nisanov v. Black & Decker (U.S.) Inc., 2008 WL 906708, at *2 (E.D.N.Y. April 3, 2008).

---

[2]Textron equates the NEISS database with investigative accident reports produced by the CPSC, which were excluded as hearsay on the issues of defect, causation, and negligent design, in McKinnon v. Skil Corp., 638 F.2d 270, 278 (1st Cir. 1981), and other cases.  The NEISS database, however, is both qualitatively and quantitatively different from the CPSC's individual accident investigations.  See, e.g., Campos v. MTD Prods., Inc., 2009 WL 2252257, at *7 (M.D. Tenn. July 24, 2009) (explaining different types of CPSC reports); Knotts v. Black & Decker, Inc., 204 F. Supp. 2d. 1029, 1041 (N.D. Ohio 2002) (ruling that CPSC accident investigation reports were hearsay when offered as factual support for the expert's opinion because the "documents are not merely statistics but contain witness or eyewitness statements by someone not an employee of the CPSC as to an incident).

[3]Because of the way the data is collected, however, the NEISS database has been construed to show only how many injuries are associated with a product, not that the product caused injury.  See Bittner by Bittner v. Am. Honda Motor Co., Inc., 533 N.W.2d 476, 481 (Wis. 1995).

Because the NEISS database is a public record within the meaning of Rule 803(8) and Textron has not shown that it is untrustworthy, the NEISS database information is excepted from the rule against hearsay.

2.  NEISS Information Not Hearsay

The Speedway and Thompson also argue that the NEISS database information is not inadmissible hearsay because it is not being offered for its truth.  Instead, they contend, the NEISS information shows that Textron had notice of serious injuries due to falls from the golf cars before the accident that injured Rod Jenks.

Evidence that would be barred as hearsay if offered to show the truth of the matter stated nevertheless may be admitted for a non-hearsay purpose, such as to show that a party had notice of that information.  Tuli v. Brigham & Women's Hosp., 656 F.3d 33, 41 (1st Cir. 2011); Kelley v. Airborne Freight Corp., 140 F.3d 335, 345-46 (1st Cir. 1998).  In Toups v. Sears, Roebuck & Co., Inc., 507 So. 2d 809, 814 (La. 1987), the plaintiffs wanted to introduce the publication, "NEISS News," that reported injuries associated with water heaters.  The court excluded the publication as hearsay.  Id.  On appeal, however, the court ruled that the NEISS News publication should have been admitted as an

official publication because it "was not proffered for the truth of its content but as evidence of information which was available to the manufacturer/vendor.  Irrespective of its accuracy, it should have alerted Sears to inquire about the need for a warning."  Id. at 818.  See also Oberg v. Honda Motor Co., Ltd., 814 P.2d 517, 520 (Or. App. 1991) (excerpts from CPSC documents reporting ATV-associated deaths were "admissible for the limited purpose of showing defendants' knowledge of the purportedly harmful characteristics of its products"), rev'd on other grounds by 512 U.S. 415 (1994).

Therefore, the NEISS information about falls from golf cars would not be hearsay if offered only to show that Textron was aware of the potential risk before Rod Jenks's accident.

### 3. Expert Use of NEISS Database Information

Even if Textron were able to show that the NEISS database information is inadmissible hearsay, that would not necessarily preclude Dr. McKenzie and Dr. McGwin from relying on the information in forming their opinions.  Expert witnesses may base their opinions on inadmissible facts or data that are relied upon by experts in the particular field, although the inadmissible evidence may not be disclosed without additional safeguards. Fed. R. Evid. 703; see also Nardi v. Pepe, 662 F.3d 107, 112 (1st

Cir. 2011); Trull, 187 F.3d at 97; Bartlett v. Mut. Pharm. Co., Inc., 760 F. Supp. 2d 220, 233 n.6 (D.N.H. 2011).

Dr. McKenzie testified that the NEISS database is used by experts in the field of product safety and injury. Textron offers no evidence to the contrary. Therefore, the NEISS database, as used in this case, meets the requirements of Rule 703 for purposes of forming the bases of expert opinions.[4]

B. Relevance

Textron contends that the NEISS database information is not relevant because Jenks, the Speedway, and Thompson cannot show that the accidents reported were substantially similar to Jenks's accident. Evidence of prior accidents is relevant to show a duty to warn, a defect, causation, or negligent design only if the accident is substantially similar to the plaintiff's accident. McKinnon, 638 F.2d at 277; accord Downey v. Bob's Discount Furniture Holdings, Inc., 633 F.3d 1, 8 (1st Cir. 2011). Substantial similarity "is a function of the theory of the case." Moulton v. Rival Co., 116 F.3d 22, 27 (1st Cir. 1997) (product liability case decided under New Hampshire law).

---

[4]The court does not address the additional safeguards required under Rule 703.

10

Jenks alleges a product liability claim against Textron that Textron failed to provide an adequate warning about the danger of riding on the back of the golf car. The Speedway and Thompson seek contribution from Textron based on that theory. Textron contends that Jenks, the Speedway, and Thompson cannot show that the NEISS database included accidents involving golf cars that were substantially similar to Textron's car which was involved in Jenks's accident or even that the NEISS database is limited to falls from golf cars instead of utility vehicles or ATVs.

Under New Hampshire law, "one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer." Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 824 (2005) (internal quotation marks omitted). "If the design of a product makes a warning necessary to avoid an unreasonable risk of harm from a foreseeable use, the lack of warning or an ineffective warning causes the product to be defective and unreasonably dangerous." Chellman v. Saab-Scania AB, 138 N.H. 73, 78 (1993). "[A] manufacturer's duty to warn is not limited to intended uses of its product, but also extends to all reasonably foreseeable uses to which the product may be put." Price v. BIC Corp., 142 N.H. 386, 390 (1997).

11

The danger associated with Jenks's accident is falling off the back of a golf car while riding in the area used for golf bags.  Both Dr. McKenzie and Dr. McGwin testified at their depositions about the specificity of the NEISS database with respect to golf car falling accidents, and both found data about injuries due to falling off the back of golf cars.  Textron does not explain why the vehicles in the reported accidents are not sufficiently similar to Textron's car to provide notice about the danger of riding on the back of any golf car.

In Moulton, the case arose from an accident when a child was burned by hot liquid that spilled from a potpourri pot.  116 F.3d at 27.  The court ruled that evidence of prior accidents which involved different kinds of potpourri pots and different circumstances was admissible to show a design defect.  Id.  The court reasoned that the pots in all of the accidents "allowed the rapid escape of a significant amount of hot liquid" despite the differences in the products and circumstances.  Id.

In this case, Jenks, the Speedway, and Thompson intend to introduce the NEISS information about the increase in the number of golf car injuries, including injuries due to falls from the back of golf cars, to show that Textron had notice of a danger associated with falling from golf cars.  They contend that because of the information available through the NEISS database,

Textron should have been aware of the problem and should have considered whether its warning was appropriate. For the purpose of showing notice of the danger related to falls from golf cars, the NEISS database information about golf car injuries is sufficiently similar to Rod Jenks's accident to be relevant.[5]

C. Unfair Prejudice

Textron contends that the NEISS database information, particularly as presented by the expert witnesses, will be unfairly prejudicial and should be excluded under Federal Rule of Evidence 403. Evidence that is relevant may be excluded if it is unfairly prejudicial, meaning that the prejudicial effect of the evidence must substantially outweigh the probative value of the evidence. United States v. Brown, --- F.3d ---, 2012 WL 149484, at * (1st Cir. Jan. 19, 2012).

Textron contends that the experts' testimony about golf car falling injuries from the NEISS database will be given undue weight because of the government source, that the experts

---

[5]Although Textron raises an issue that injuries involving other vehicles may have been included in the golf car code, even if that were the case, those injuries appear to be sufficiently related to the dangers of falling from the back of a golf car to provide notice of the danger. Textron provides no evidence that it properly disregarded the NEISS database information because it was not sufficiently related to its golf cars.

improperly use the NEISS information to show that falls from the golf car caused injuries, and that the testimony will lead to delay and mini trials while Textron cross examines the experts about the facts in the NEISS database. An appropriate jury instruction could address any possible undue weight that might be given the NEISS database because of its source. The experts' opinions appear to pertain to the notice available to Textron about the danger of injury related to falls from the back of golf cars, not to the causes of specific injuries or accidents. To the extent the experts' testimony uses the NEISS database information to assign a cause to Rod Jenks's accident, Textron may raise an appropriate objection at that time.

Textron represents that its cross examination of the expert witnesses will necessarily involve the factual scenarios of each injury reported in the NEISS database, which will lead to collateral issues and cause delay in the trial. The experts' testimony about the NEISS database information is intended to show that Textron had knowledge of the potential danger of injury due to falls from golf cars. As is noted above, Textron has not demonstrated that any differences between the injuries reported in the NEISS database and Jenks's accident are material in this case. Therefore, as presented for purposes of this motion, no

extensive examination about the accidents reported in the NEISS database would be necessary.

## Conclusion

For the foregoing reasons, the defendant's motion to exclude NEISS evidence (document no. 118) is denied.

SO ORDERED.

                                                              Joseph A. DiClerico, Jr.
                                                              United States District Judge

January 31, 2012

cc:  R. Matthew Cairns, Esquire
     James M. Campbell, Esquire
     R. Peter Decato, Esquire
     Dona Feeney, Esquire
     Mark V. Franco, Esquire
     Neil A. Goldberg, Esquire
     John A.K. Grunert, Esquire
     Daniel R. Mawhinney, Esquire
     David S. Osterman, Esquire
     Christopher B. Parkerson, Esquire
     Michael D. Shalhoub, Esquire
     William A. Whitten, Esquire