UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Melissa Jenks, Individually
and as G/N/F of Roderick Jenks</u>

   v.                                  Civil No. 09-cv-205-JD
                                                           Opinion No. 2012 DNH 039

<u>New Hampshire Motor Speedway, et al.</u>

   v.

<u>Textron Financial, Inc. and A.B.L., Inc.</u>

O R D E R

Melissa Jenks, as the guardian and next friend of her husband, Roderick Jenks, and on her own behalf, sued New Hampshire Motor Speedway, Breann Thompson, and Textron, Inc., alleging negligence claims against Thompson and the Speedway and product liability claims against Textron.  Textron brought cross claims against the Speedway and Thompson for contribution and indemnification.  Textron moves to limit the testimony of Jenks's expert witness, William Vigilante.  Jenks, the Speedway, and Thompson object to the motion.

Background

Roderick Jenks worked at the New Hampshire Motor Speedway on July 16, 2006, as part of a program in which the Speedway donates money to a charity in exchange for work done by individuals who volunteer to participate.  Jenks, along with several others, was assigned to provide security in the track infield.  After receiving their assignments, Jenks walked with a fellow worker, Marc MacAlpine, toward their assigned area.

Breann Thompson, a Speedway employee, drove by Jenks and MacAlpine in a golf car.  MacAlpine asked Thompson to give them a ride, and she agreed.  MacAlpine got into the passenger seat next to Thompson, and Jenks rode on the back of the car in an area for carrying golf bags.  When Thompson swerved, Jenks fell off the car, hit his head, and was seriously injured.

The golf car driven by Thompson was an E-Z-GO model that was manufactured by Textron.  A.B.L.. Inc. leased the golf car, along with many others, to the Speedway for the racing event.

Jenks brought negligence claims against the Speedway and Thompson and product liability claims against Textron.  Textron brought cross claims against the Speedway and Thompson for contribution and indemnification.

Discussion

Textron seeks to preclude the opinion and testimony of Jenks's expert, Dr. William Vigilante, on the ground that they are not based on reliable methods and principles as required under Federal Rule of Evidence 702. Textron also contends that Vigilante's opinions are speculative and invade the province of the jury. The Speedway, Thompson, and Jenks object to Textron's motion and contend that Vigilante's opinions are admissible.

"The touchstone for the admission of expert testimony in federal court litigation is Federal Rule of Evidence 702." Crowe v. Marchand, 506 F.3d 13, 17 (1st Cir. 2007). Under that rule,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the structure of the rule suggests, before the factfinder in a case can consider testimony over an adverse party's objection, the court serves as a gatekeeper, "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow

Pharm., Inc., 509 U.S. 579, 597 (1993); see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999).

Although the proponent of an expert witness bears the burden of proving the admissibility of his opinion, see Daubert, 509 U.S. at 592, the burden is not especially onerous, because "Rule 702 has been interpreted liberally in favor of the admission of expert testimony," Levin v. Dalva Bros., Inc., 459 F.3d 68, 78 (1st Cir. 2006).  Thus, so long as "an expert's scientific testimony rests upon 'good grounds, based on what is known,'" Rule 702 does "not require that [the proponent] carry the burden of proving to the judge that the expert's assessment of the situation is correct."  Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998) (quoting Daubert, 509 U.S. at 590).

A.  Reliability

Textron contends that Vigilante's opinions are unreliable in three ways: I) he employed a flawed methodology when forming his opinion concerning the inadequacy of the golf car's warnings; ii) he did not "perform scientific testing" on his proposed alternate warning; and iii) his proposed alternate warning was not subjected to peer review and has not been implemented by other golf car manufacturers.

4

Expert opinion is admissible under Rule 702 if, among other things, "the testimony is the product of reliable principles and methods."  Factors that may be considered in determining whether an expert witness's opinion is based on reliable principles and methods include "(1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline."  Milward v. Acuity Specialty Prods. Grp., Inc., 639 F.3d 11, 14 (1st Cir. 2011) (internal quotation marks and citation omitted).  These factors "do not function as a definitive checklist or test, but form the basis for a flexible inquiry into the overall reliability of a proffered expert's methodology."  Ruiz-Troche, 161 F.3d at 81 (internal quotation marks and citation omitted); see also Zachar v. Lee, 363 F.3d 70, 76 (1st Cir. 2004).  The purpose of the inquiry is to ensure that expert testimony is based on scientific knowledge "rather than guesswork."  Ruiz-Troche, 161 F.3d at 81.

1. Inadequacy of Existing Warnings

Textron contends that Vigilante's opinions concerning the inadequacy of the warning on its golf cars is unreliable because

Vigilante failed to take measurements of the golf car, speak directly to witnesses, or do any "objective testing" of the warnings.

Vigilante explained in his expert report and during his deposition testimony that he reviewed and relied upon various deposition transcripts, including those of eye witnesses to the accident and one of the engineers of Textron's E-Z-GO division, which designed and manufactured the model golf car at issue in this case.  In his report, Vigilante provides measurements of the golf car, both in terms of the golf car itself and the warning decal attached to the dashboard, and discusses how those measurements factor into his opinion.  Textron does not explain how Vigilante's failure to speak directly to witnesses or personally examine the golf car involved in the incident undermines his methodology, especially when he was able to obtain the necessary information through other sources.

Textron also challenges Vigilante's opinion on the adequacy of its warnings because he testified that he used "heuristic testing" in reaching his opinion.  Textron equates heuristic testing to Vigilante's "subjective evaluation of the warning's effectiveness" and the equivalent of an opinion of "'it is because I say so.'"

Although the parties dispute the merits of "heuristic testing," the court need not determine the term's proper definition or whether it alone is a reliable methodology for expert testimony. Vigilante's analysis of Textron's warning is based on more than his subjective evaluation. In reaching his opinion that the golf car's warnings were inadequate, Vigilante considered established standards and guidelines for product warnings, as well as warnings and human factors literature and his own extensive experience and training in human factors analysis. Specifically, Vigilante determined that Textron's warnings did not meet the American National Standards Institute ("ANSI") guidelines for "product safety signs and labels" and was inconsistent with criteria set forth in various articles and literature on adequate product warnings. Such opinions go beyond the mere "ipse dixit of the expert," and are sufficiently reliable to survive a <u>Daubert</u> challenge.[1]

---

[1] Notably, the cases cited by Textron in support of its "subjective analysis" argument are defective design cases, in which the proposed experts criticize the design of the product at issue without explaining the reasoning or calculations behind their conclusions. The analyses in these cases are not applicable here.

2.  Testing of Proposed Warning

Textron also challenges the reliability of Vigilante's opinions because he did not submit his proposed alternate warning to scientific testing.

Vigilante concedes that he did not test the alternate warning he proposed for Textron's golf cars. But whether Vigilante tested his proposed warning is not the appropriate inquiry under Daubert. Instead, the proper question is whether the *methodology* applied by Vigilante has been adequately tested and accepted within the scientific community, not whether his result has been evaluated in the field. See Daubert, 509 U.S. at 593-94.

Vigilante drafted the proposed warning in accordance with ANSI standards in conjunction with his review of warnings literature and guidelines. He conducted numerous hours of testing and research on the components and characteristics of his proposed warning, including usability testing, a methodology that Textron does not appear to challenge. Therefore, Vigilante's methodology in drafting his proposed warning has been accepted within his field. The lack of scientific testing on his proposed warning does not render his opinion inadmissible.

Textron also challenges Vigilante's proposed warning because, Textron argues, Vigilante "is not clear where on the

back of the vehicle his warning should be placed." Vigilante, however, offered an opinion as to the approximate placement and size of his proposed alternate warning, and stated that Textron could determine the exact specifications if it determined that modifications would be more appropriate. Textron's dissatisfaction with those opinions is not appropriately addressed at this stage. See Milward, 639 F.3d at 22 ("the correctness of the expert's conclusions . . . are factual matters to be determined by the trier of fact") (internal quotation marks and citations omitted).

    3.   Peer Review and Implementation by Other Manufacturers

Textron also challenges the reliability of Vigilante's opinions because his opinions have not been subjected to peer review or publication and no other golf car manufacturer has implemented his proposed alternative warning.

The Speedway and Thompson contend that Vigilante's proposed warning was peer reviewed by Harry Ehrlich, Vigilante's co-worker. For purposes of a Daubert inquiry, however, the relevant peer review group cannot be a member of Vigilante's own workplace. See, e.g., Ahlberg v. Chrysler Corp., 481 F.3d 630, 635 (8th Cir. 2007). Regardless, the proper inquiry is not whether Vigilante's proposed warning itself has been peer

reviewed, but whether Vigilante's technique or theory has been subjected to peer review and publication.  See, e.g., Milward, 639 F.3d at 14.

As discussed above, Vigilante's proposed warning is based on standards promulgated by the ANSI, an independent organization that oversees the development of safety guidelines which "are widely-accepted throughout the United States and internationally as an authoritative source for safety compliance."  Nat'l Sur. Corp. v. India Tea and Spices, Inc., 2012 WL 113608, at *2 n.1 (D. Mass. Jan. 12, 2012); see also Pratico v. Portland Terminal Co., 783 F.2d 255, 261 (1st Cir. 1985).  Therefore, his conclusions are based on material that meets the "peer review or publication" prong of Daubert.[2]  Regardless, even if Vigilante's opinion was not based on such material, peer review is not "a *sine qua non* of admissibility."  Ruiz-Troche, 161 F.3d at 84 (internal quotation marks and citation omitted); see also

---

[2]Textron argues in the alternative that Vigilante's opinion should be precluded because he did not rely on peer reviewed literature regarding the effectiveness of warnings on golf cars specifically.  This argument is based on an overly restrictive reading of Daubert, especially because Vigilante testified that he did not believe any such literature existed.  Under Textron's interpretation of the standard, no expert, including its own, could employ a sufficiently reliable methodology in this case because of the lack of peer reviewed literature on golf car warnings.

Granfield v. CSX Transp., Inc., 597 F.3d 474, 486 (1st Cir. 2010).

In addition, Vigilante was not required to compare the language of his proposed warning to those provided by other manufacturers in order to render a reliable opinion. Assuming that no other golf car manufacturer has adopted a similar warning to that proposed by Vigilante, which is disputed, this deficiency is not fatal to the admissibility of Vigilante's opinion. See, e.g., Pineda v. Ford Motor Co., 520 F.3d 237, 248-49 (3rd Cir. 2008) (expert "did not have to compare the language of [the warnings on the defendant's product] with the language provided by other manufacturers in order to render a reliable opinion that [the defendant's product] failed to provide adequate instructions or warnings").

In sum, Textron's various challenges to the reliability of Vigilante's opinion are better characterized as challenges to Vigilante's conclusions. But "[i]t is the expert's methodology, as opposed to his conclusions, which 'remains the central focus of a Daubert inquiry.'" Ruiz-Troche, 161 F.3d at 81. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596; see also Fed. R. Evid. 702 advisory

committee note (2000) ("the rejection of expert testimony [on the basis of unreliability] is the exception rather than the rule"). Vigilante's opinions are the product of a sufficiently reliable methodology to be admissible.

B.  Speculative Nature of Opinions

Textron also argues that the court should preclude Vigilante from testifying because "his opinions are completely speculative and invade the province of the jury." In support, Textron cites various cases where the court precluded the opinions of human factors experts, and contends that Vigilante's opinions in this case address common sense matters that should be left exclusively to the jury.

"'The court, in its role as gatekeeper, must exclude expert testimony . . . which invades the province of the jury to find facts.'" Sundance, Inc. v. DeMonte Fabricating Ltd., 550 F.3d 1356, 1364 (Fed Cir. 2008). A statement of the obvious which is within the ken of a lay jury is not the proper subject of expert testimony. See United States v. Zajanckauskas, 441 F.3d 32, 39 (1st Cir. 2006) ("Expert testimony does not assist where the [trier of fact] has no need for an opinion because it easily can be derived from common sense, common experience, the [trier of fact's] own perceptions, or simple logic.") (internal quotation

12

marks and citations omitted); United States v. Fosher, 590 F.2d 381, 383 n.1 (1st Cir. 1979).

Textron contends that Vigilante's testimony is speculative but argues primarily that human factors experts do not provide opinions that go beyond common sense.  Courts frequently admit the testimony of human factors experts when they testify about matters not within the common knowledge of the jury.  See Mihailovich v. Laatsch, 359 F.3d 892, 919 (7th Cir. 2004) ("[human factors analysis] is a recognized analytical approach that is applied in a variety of contexts and may yield legitimate insights as to the hazards that particular products and situations . . . may pose in light of predictable human behavioral patterns"); Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1243-44 (10th Cir. 2000); Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir. 1986); Marzoll v. Marine Harvest US, Inc., 2009 WL 4456321, at *9 (D. Me. Nov. 29, 2009); Nna v. Am. Standard, Inc., 630 F. Supp. 2d 115, 138 (D. Mass. 2009). Moreover, New Hampshire law encourages the use of experts in failure to warn claims.  See Beaudette v. Louisville Ladder, Inc., 462 F.3d 22, 27 (1st Cir. 2006) ("We find it clear that, under New Hampshire law, expert testimony is required for the Beaudette's failure to warn claim."); see also Lemay v. Burnett, 139 N.H. 633, 635-36 (1995).

It is undisputed that Vigilante is an expert in human factors and ergonomics.  His testimony concerns the adequacy of the warnings on the golf car and whether Jenks's riding on the back of the golf car and subsequent injury were foreseeable to Textron in light of available information at that time.  The theories and methods upon which he relies are recognized in his field, and his knowledge of warnings and their proper design may be helpful to the jury.  In addition, Textron's expert offers similar opinions, concluding that "additional [warnings] would likely have had no effect on the behavior of Mr. Jenks" and "there is simply no evidence of a defect in the warnings provided with the Textron golf car."  Therefore, Vigilante's opinions sufficiently address matters outside "simple logic" and are admissible.

## Conclusion

For the foregoing reasons, Textron's motion in limine to preclude Vigilante's testimony (document no. 117) is denied. Textron remains free, however, to raise appropriate objections to

Vigilante's testimony at trial to the extent the trial context would support such objections.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

February 8, 2012

cc: R. Matthew Cairns, Esquire
James M. Campbell, Esquire
R. Peter Decato, Esquire
Dona Feeney, Esquire
Mark V. Franco, Esquire
Neil A. Goldberg, Esquire
John A.K. Grunert, Esquire
Daniel R. Mawhinney, Esquire
David S. Osterman, Esquire
Christopher B. Parkerson, Esquire
Michael D. Shalhoub, Esquire
William A. Whitten, Esquire