UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Melissa Jenks, Individually
and as  g/n/f of Roderick Jenks</u>

　　　v.                              Civil No. 09-cv-205-JD
                                     Opinion No. 2012 DNH 044

<u>New Hampshire Motor Speedway,
Breann Thompson, and Textron, Inc.</u>

　　　v.

<u>A.B.L, Inc.</u>

O R D E R

Melissa Jenks, as the guardian and next friend of her
husband, Roderick Jenks, and on her own behalf, sued New
Hampshire Motor Speedway, Breann Thompson, and Textron, Inc.,
alleging negligence claims against Thompson and the Speedway and
product liability claims against Textron.  Textron brought cross
claims against the Speedway and Thompson for contribution and
indemnification.  The Speedway and Thompson brought cross claims
against Textron for contribution and indemnification and third-
party claims against Textron Financial Corporation and A.B.L.,
Inc. ("ABL")[1]  Textron moves for summary judgment, and ABL moves
to join the motion.

---

[1]Summary judgment was granted in Textron Financial
Corporation's favor on the third-party claims against it.

I.   Motion to Join Motion for Summary Judgment

     In its motion for summary judgment, ABL stated that it was incorporating and adopting by reference Textron's motion for summary judgment on the defense of an open and obvious danger. The court did not consider the defense in that context and instead required ABL to file an appropriate motion if it intended to join in Textron's motion.  ABL has filed a motion to join in Textron's motion, which is addressed as follows.

     As a preliminary matter, the court points out that memoranda in support of summary judgment are limited to twenty-five pages, and memoranda in support of reply are limited to ten pages.  LR 7.1(a)(3) & 7.1(e)(1).  ABL filed a twelve-page memorandum in support of its own motion for summary judgment.  Textron filed a twenty-nine page memorandum in support of its motion for summary judgment, without seeking leave to exceed the limit, and then filed an eleven-page reply memorandum, also without seeking leave.[2]

     If ABL were permitted to incorporate Textron's filings into its own filings, ABL would have filed a twenty-nine page memorandum in support of summary judgment, followed by an eleven-

---

     [2]Textron did not number the first six pages of its memorandum in support of summary judgment, leaving only twenty-three numbered pages.

2

page reply, all without leave of the court.[3]  As is demonstrated
here, the device of incorporating other filings by reference
would obviate the rules limiting the length of memoranda.  In the
future, counsel shall not seek to incorporate other filings by
reference and shall carefully follow the local rules that govern
filings in this court.

In addition, the First Circuit has cautioned practitioners
"that adoption of arguments by reference is a tricky business."
United State v. Torres-Rosa, 209 F.3d 4, 7 (1st Cir. 2000).  "The
party seeking to adopt an argument has a burden, at the very
least, to ensure that it is squarely before the court and to
explain how and why it applies in his case."  Id.  ABL did not
present the defense of an open and obvious danger in light of its
status in the case for purposes of its own motion for summary
judgment or in its motion to join Textron's motion.

As presented, ABL seeks to join in Textron's motion for
purposes of the open and obvious danger defense, without further
elaboration.  The other parties do not object.  Despite ABL's
barebones approach, its motion to join Textron's motion for
summary judgment is granted, and ABL will be bound by the result.

---

[3]Although only parts of Textron's memoranda focus
specifically on the defense of an open and obvious danger, ABL
necessarily joined the factual statements.

II.   Textron's Motion for Summary Judgment

Textron moves for summary judgment on the product liability claims against it, arguing that the danger of riding on the back of the E-Z-GO golf car was open and obvious and that Jenks lacks an expert witness to prove a defective design claim other than for an inadequate warning.   Textron also contends that it is entitled to summary judgment on the contribution and indemnification claims brought by the Speedway and Thompson. Jenks, the Speedway, and Thompson object to parts of the motion.

A.   Standard of Review

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Material facts are "facts that might affect the outcome of the suit under the governing law."   Id. at 248.   The court considers the undisputed material facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Avery v. Hughes, 661 F.3d 690, 693 (1st Cir. 2011).

4

B.  Background

Rod Jenks worked at the New Hampshire Motor Speedway on July
16, 2006, with others who volunteered to participate in a charity
program at the Speedway.  Jenks, along with several others, was
assigned to provide security in the track infield.  After
receiving their assignments, Jenks walked with a fellow worker,
Marc MacAlpine, toward their assigned area.

Breann Thompson, a Speedway employee, drove by Jenks and
MacAlpine in a golf car.  MacAlpine asked Thompson to give them a
ride, and she agreed.  MacAlpine got into the passenger seat next
to Thompson, and Jenks rode on the back of the car in an area for
carrying golf bags.  When Thompson swerved, Jenks fell off the
back of the car, hit his head, and was seriously injured.

The golf car driven by Thompson was a two-seat, 1997 model,
E-Z-GO car that was manufactured by Textron, Inc.  ABL leased the
golf car, along with many others, to the Speedway for the racing
event.  The golf car had a maximum speed between twelve and
fifteen miles per hour.  The car did not have a top and had an
open space in the back area, behind the passenger seat, that
appears to be intended for carrying golf bags.

The golf car had an instruction label stuck to the
dashboard, which included a warning that the car should be
operated with only two passengers who should be seated inside the

5

car while the car was in motion.  The instruction label was
directed to the operator of the car and was not intended to be
read by anyone in the rear area of the car.  No instruction label
or warning was placed in the rear area of the golf car.

Speedway employees testified that they had seen people
riding on the back of golf cars at the Speedway.  Several of them
stated that they thought it was dangerous to overload the golf
cars.

### C.  Discussion

Textron's motion raises three issues.  Textron asserts that
it is entitled to summary judgment on Jenks's product liability
warning claim because the danger of riding on the back of the
golf car was open and obvious.  Textron also asserts that Jenks
cannot prove a defective design claim because she lacks expert
witness opinion to support the claim.  With respect to the
Speedway's and Thompson's contribution and indemnification
claims, Textron contends that it is entitled to summary judgment
because the contribution claim should not be part of this action
and because the Speedway and Thompson cannot prove that they have
a right to indemnification.

1.  <u>Open and Obvious</u>

Under New Hampshire law, "one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer." <u>Kelleher v. Marvin Lumber & Cedar Co.</u>, 152 N.H. 813, 824 (2005) (internal quotation marks omitted). "If the design of a product makes a warning necessary to avoid an unreasonable risk of harm from a foreseeable use, the lack of warning or an ineffective warning causes the product to be defective and unreasonably dangerous." <u>Chellman v. Saab-Scania AB</u>, 138 N.H. 73, 78 (1993). "Determining whether a product's design is unreasonably dangerous implicates a multifaceted balancing process involving evaluation of many conflicting factors, [including] . . . the presence and efficacy of a warning to avoid an unreasonable risk of harm from hidden dangers or from foreseeable uses." <u>Price v. BIC Corp.</u>, 142 N.H. 386, 389 (1997) (internal quotation marks and citations omitted).

Because "a manufacturer's duty to warn is not limited to intended uses of its product, but also extends to all reasonably foreseeable uses to which the product may be put, . . . [m]anufacturer liability may still attach even if the danger is obvious to a reasonable consumer or if the user employs the product in an unintended but foreseeable manner." <u>Id.</u> at 390.

7

"The obviousness of the danger should be evaluated against the reasonableness of the steps which the manufacturer must take to reduce the danger." Id.  "Reasonableness, foreseeability, utility, and similar factors are questions of fact for the jury." Thibault v. Sears, Roebuck & Co., 118 N.H. 802, 809 (1978); accord Vautour v. Body Masters Sports Indus., Inc., 147 N.H. 150, 154 (2001)).

Textron contends that the danger of falling while riding on the back of a golf car was open and obvious and notes various witnesses who have acknowledged they knew of the danger.  Because the danger was not hidden, Textron argues, it had no duty to warn.  In support, Textron cites cases from other states where courts have decided, as a matter of law, that the danger of riding in the back area of a pickup truck and on the tines of a forklift was open and obvious, requiring no warning.

In New Hampshire, however, the duty to warn depends, among other things, on the risk of danger, the degree to which the danger is obvious or hidden, whether the use was foreseeable, and the reasonableness of the manufacturer's actions.  See Price, 142 N.H. at 390; Chellman, 138 N.H. at 77-78.  Such matters present factual questions for the jury unless the outcome cannot be disputed.  Price, 142 N.H. at 390.  Textron has not shown that to be the case here.

8

The record presented for summary judgment shows that people recognized the risk of riding on the back of golf cars and that people often rode on the back of the cars at the Speedway where the accident happened.[4]  Textron recognized the risk and included an instruction for the operator of the car to have only two passengers that were seated when the car was moving.[5]  William Howerton, an engineer retained by the Speedway and Thompson as an expert, examined the EZ GO golf car and noted that the back of the car looked like a reasonable place to stand.

Based on the record presented, Textron has not demonstrated that it is entitled to judgment as a matter of law, under the legal standard applicable in New Hampshire.

2.  <u>Defective Design</u>

Jenks brought a single product liability claim against Textron.  She alleges both that the golf car was "defective in

---

[4]To the extent Textron argues that the danger was open and obvious to Rod Jenks but was not reasonably foreseeable to it, that argument presents an "apparent incongruity" that undermines the defense.  <u>Laramie v. Sears, Roebuck & Co.</u>, 142 N.H. 653, 657 (1998).

[5]Because the issue is raised only tangentially, the court does not address in this order whether New Hampshire recognizes a continuing duty to warn as presented in the <u>Restatement (Third) of Torts: Product Liability</u> § 10.

its design and manufacture, which rendered it unreasonably
dangerous, and amongst other things, the subject cart was
unstable and unwieldy and had a propensity to cause disruption to
its passengers due to a high center of gravity and unsafe design"
and that "there were no warnings posted on the golf cart stating
that it was dangerous and unsafe to operate the cart, with a
passenger on the back of the cart."   Complaint, ¶¶ 66 & 68.
Textron moves for summary judgment on the claim to the extent it
is based on the first allegation, that the golf car was
defectively designed because it was unstable and unwieldy.  Jenks
did not respond to Textron's motion to dismiss that part of the
design defect claim.

     A defective design product liability claim requires proof of
four elements:

> (1) the design of the product created a defective
> condition unreasonably dangerous to the user; (2) the
> condition existed when the product was sold by the
> seller in the business of selling such products; (3)
> the use of the product was reasonably foreseeable by
> the manufacturer; and (4) the condition caused injury
> to the user or the user's property.

Vautour, 147 N.H. at 153-54.  Whether a product is unreasonably
dangerous "is determined based on a risk-utility balancing test"
that requires the jury to "evaluate many possible factors
including the usefulness and desirability of the product to the
public as a whole, whether the risk of danger could have been

10

reduced without significantly affecting either the product's effectiveness or manufacturing cost, and the presence and efficacy of a warning to avoid an unreasonable risk of harm from hidden dangers or from foreseeable uses." Id. at 154.

Textron contends that Jenks would need an expert witness to establish the defective condition of the golf car due to its design. Textron asserts that Dr. Vigilante, Jenks's design defect expert witness, provides opinions about warnings but not about the design of the car with respect to whether it was unstable or unwieldy and cites to Dr. Vigilante's deposition testimony to show the focus of his opinions. As noted above, Jenks did not respond to this part of Textron's motion, and therefore, she provides no contrary evidence or argument.

The cited parts of Dr. Vigilante's deposition testimony indicate that his opinions are limited to defective design of the golf car because of inadequate warnings. The questions of whether the golf car was unstable or unwieldy and whether that condition caused or contributed to cause the accident appear to be beyond the knowledge and experience of average jurors, making expert opinion evidence necessary. See, e.g., Estate of Joshua T. v. State, 150 N.H. 405, 408 (2003). Therefore, in the absence of any contrary evidence or argument, Textron is entitled to summary judgment on Jenks's defective design claim to the extent

11

it is based on allegations that the golf car was defective
because it was unstable or unwieldy.

     3.  <u>Contribution</u>

     Textron argues that under New Hampshire law, RSA 507:7-g, a
contribution claim cannot be brought as part of the tort action
and moves for summary judgment on the contribution claim brought
by the Speedway and Thompson.  In its answer to Jenks's
complaint, however, Textron brought contribution and
indemnification claims against the Speedway and Thompson.  The
Speedway and Thompson then moved to amend their answer to assert
contribution and cross claims against Textron.  The motion was
granted on September 28, 2010, because both Textron and Jenks
assented to the motion.

     Almost a year later, Textron Financial Corporation moved for
summary judgment, arguing in part that the contribution and
indemnification claims brought by the Speedway and Thompson were
barred as premature by 507:7-g.  The court denied that part of
Textron Financial Corporation's motion in an order issued on
August 17, 2011, because it was undisputed that Jenks agreed to
have the contribution claim brought in the principal action.

     Three months later, Textron filed its motion for summary
judgment, arguing that the contribution claim is barred as

12

premature by RSA 507:7-g.  Textron did not acknowledge that Jenks agreed to the contribution claim brought by the Speedway and Thompson or that Textron too brought contribution and indemnification claims in this action.  Textron also did not address the differences within this district about the application of RSA 507:7-g in federal court.

The Speedway and Thompson again point out that Jenks agreed to have the contribution claim brought in this action. Therefore, Textron's motion for summary judgment on the contribution claim is denied.


4.  <u>Indemnification</u>

Textron contends that a common law indemnification claim can only be brought by a party who is not at fault.  Textron argues that the Speedway and Thompson were at fault in Rod Jenks's accident and that summary judgment must be granted on the indemnification claim.  The Speedway and Thompson do not respond to that part of Textron's motion.

Under New Hampshire law, "'[a] right to indemnity arises where one is legally required to pay an obligation for which another is primarily liable.'"  <u>One Beacon Ins., LLC v. M&M Pizza, Inc.</u>, 160 N.H. 638, 643 (2010) (quoting <u>Morrissette v. Sears, Roebuck & Co.</u>, 114 N.H. 384, 388 (1974)).  "[O]ne joint

tortfeasor can obtain indemnification, a complete shifting of liability, against another where the indemnitee's liability is derivative or imputed by law." Consol. Util. Equip. Servs., Inc. v. Emphart Mfg. Corp., 123 N.H. 258, 261 (1983). In addition, an implied right to indemnification may arise when the fault of the indemnitor is the source of the indemnittee's liability. Hamilton v. Volkswagen of Am., Inc., 125 N.H. 561, 563-64 (1984); accord Jaswell Drill Corp. v. Gen. Motors Corp., 129 N.H. 342, 346 (1987).

Textron contends that implied indemnification does not arise in this case because both the Speedway and Thompson bear responsibility for Rod Jenks's injuries. Textron provides evidence to show that the Speedway was aware of people riding on the back of golf cars, driving golf cars at high speed, and carrying too many people. Textron also cites evidence that Thompson knew it was wrong to allow Rod Jenks to ride on the back of the golf car.

In their cross claims for indemnification against Textron, the Speedway and Thompson both deny any liability and also allege that if either "is determined to be liable in tort to any plaintiff, then such liability is wholly derivative of the fault of Textron, Inc." The Speedway and Thompson do not allege a right of indemnification based on the terms of an agreement with

14

Textron.  They also do not explain any basis for derivative
liability, which is not apparent given the negligence claim
against the Speedway and Thompson and the product liability claim
against Textron.

No finding or ruling can be made in the context of this
motion with respect to the fault of the Speedway and Thompson in
causing the accident that injured Rod Jenks.  The record,
however, does not support an indemnification claim based on a
theory that any liability of the Speedway and Thompson is
derivative of the liability of Textron.  Therefore, Textron is
entitled to summary judgment on the indemnification claim.


## Conclusion

For the foregoing reasons, ABL's motion to join in part of
Textron's motion (document no. 148) is granted.  Textron's motion
for summary judgment (document no. 113) is granted as to that
part of Jenks's design defect claim alleging that "the subject
cart was unstable and unwieldy and had a propensity to cause
disruption to its passengers due to a high center of gravity and
unsafe design" and as to the indemnification claim of the
Speedway and Thompson.  The motion is otherwise denied.

Because that part of Textron's motion seeking summary

15

judgment on the defense of an open and obvious danger is denied,
that part of the motion is also denied as to ABL.


        SO ORDERED.




                                    _____
                                    Joseph A. DiClerico, Jr.
                                    United States District Judge

February 13, 2012

cc:  R. Matthew Cairns, Esquire
     James M. Campbell, Esquire
     R. Peter Decato, Esquire
     Dona Feeney, Esquire
     Mark V. Franco, Esquire
     Neil A. Goldberg, Esquire
     John A.K. Grunert, Esquire
     Daniel R. Mawhinney, Esquire
     David S. Osterman, Esquire
     Christopher B. Parkerson, Esquire
     Michael D. Shalhoub, Esquire
     William A. Whitten, Esquire