UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Melissa Jenks, Individually
and as g/n/f of Roderick Jenks

   v.                                  Civil No. 09-cv-205-JD
                                                  Opinion No. 2012 DNH 044

New Hampshire Motor Speedway,
Breann Thompson, and Textron, Inc.

   v.

A.B.L, Inc.

## O R D E R

Melissa Jenks, as the guardian and next friend of her husband, Roderick Jenks, and on her own behalf, sued New Hampshire Motor Speedway, Breann Thompson, and Textron, Inc., alleging negligence claims against Thompson and the Speedway and product liability claims against Textron. Textron brought cross claims against the Speedway and Thompson for contribution and indemnification. The Speedway and Thompson brought cross claims against Textron for contribution and indemnification and third-party claims against Textron Financial Corporation and A.B.L., Inc. ("ABL")[1] Textron moves for summary judgment, and ABL moves to join the motion.

---

[1] Summary judgment was granted in Textron Financial Corporation's favor on the third-party claims against it.

I.  <u>Motion to Join Motion for Summary Judgment</u>

In its motion for summary judgment, ABL stated that it was incorporating and adopting by reference Textron's motion for summary judgment on the defense of an open and obvious danger. The court did not consider the defense in that context and instead required ABL to file an appropriate motion if it intended to join in Textron's motion. ABL has filed a motion to join in Textron's motion, which is addressed as follows.

As a preliminary matter, the court points out that memoranda in support of summary judgment are limited to twenty-five pages, and memoranda in support of reply are limited to ten pages. LR 7.1(a)(3) & 7.1(e)(1). ABL filed a twelve-page memorandum in support of its own motion for summary judgment. Textron filed a twenty-nine page memorandum in support of its motion for summary judgment, without seeking leave to exceed the limit, and then filed an eleven-page reply memorandum, also without seeking leave.[2]

If ABL were permitted to incorporate Textron's filings into its own filings, ABL would have filed a twenty-nine page memorandum in support of summary judgment, followed by an eleven-

---

[2]Textron did not number the first six pages of its memorandum in support of summary judgment, leaving only twenty-three numbered pages.

2

page reply, all without leave of the court.³  As is demonstrated here, the device of incorporating other filings by reference would obviate the rules limiting the length of memoranda.  In the future, counsel shall not seek to incorporate other filings by reference and shall carefully follow the local rules that govern filings in this court.

In addition, the First Circuit has cautioned practitioners "that adoption of arguments by reference is a tricky business." <u>United State v. Torres-Rosa</u>, 209 F.3d 4, 7 (1st Cir. 2000).  "The party seeking to adopt an argument has a burden, at the very least, to ensure that it is squarely before the court and to explain how and why it applies in his case."  <u>Id.</u>  ABL did not present the defense of an open and obvious danger in light of its status in the case for purposes of its own motion for summary judgment or in its motion to join Textron's motion.

As presented, ABL seeks to join in Textron's motion for purposes of the open and obvious danger defense, without further elaboration.  The other parties do not object.  Despite ABL's barebones approach, its motion to join Textron's motion for summary judgment is granted, and ABL will be bound by the result.

---

³Although only parts of Textron's memoranda focus specifically on the defense of an open and obvious danger, ABL necessarily joined the factual statements.

II.  Textron's Motion for Summary Judgment

Textron moves for summary judgment on the product liability claims against it, arguing that the danger of riding on the back of the E-Z-GO golf car was open and obvious and that Jenks lacks an expert witness to prove a defective design claim other than for an inadequate warning.  Textron also contends that it is entitled to summary judgment on the contribution and indemnification claims brought by the Speedway and Thompson. Jenks, the Speedway, and Thompson object to parts of the motion.

A.  Standard of Review

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Material facts are "facts that might affect the outcome of the suit under the governing law."  Id. at 248.  The court considers the undisputed material facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Avery v. Hughes, 661 F.3d 690, 693 (1st Cir. 2011).

B.  Background

Rod Jenks worked at the New Hampshire Motor Speedway on July 16, 2006, with others who volunteered to participate in a charity program at the Speedway. Jenks, along with several others, was assigned to provide security in the track infield. After receiving their assignments, Jenks walked with a fellow worker, Marc MacAlpine, toward their assigned area.

Breann Thompson, a Speedway employee, drove by Jenks and MacAlpine in a golf car. MacAlpine asked Thompson to give them a ride, and she agreed. MacAlpine got into the passenger seat next to Thompson, and Jenks rode on the back of the car in an area for carrying golf bags. When Thompson swerved, Jenks fell off the back of the car, hit his head, and was seriously injured.

The golf car driven by Thompson was a two-seat, 1997 model, E-Z-GO car that was manufactured by Textron, Inc. ABL leased the golf car, along with many others, to the Speedway for the racing event. The golf car had a maximum speed between twelve and fifteen miles per hour. The car did not have a top and had an open space in the back area, behind the passenger seat, that appears to be intended for carrying golf bags.

The golf car had an instruction label stuck to the dashboard, which included a warning that the car should be operated with only two passengers who should be seated inside the

car while the car was in motion. The instruction label was directed to the operator of the car and was not intended to be read by anyone in the rear area of the car. No instruction label or warning was placed in the rear area of the golf car.

Speedway employees testified that they had seen people riding on the back of golf cars at the Speedway. Several of them stated that they thought it was dangerous to overload the golf cars.

### C. Discussion

Textron's motion raises three issues. Textron asserts that it is entitled to summary judgment on Jenks's product liability warning claim because the danger of riding on the back of the golf car was open and obvious. Textron also asserts that Jenks cannot prove a defective design claim because she lacks expert witness opinion to support the claim. With respect to the Speedway's and Thompson's contribution and indemnification claims, Textron contends that it is entitled to summary judgment because the contribution claim should not be part of this action and because the Speedway and Thompson cannot prove that they have a right to indemnification.

1. <u>Open and Obvious</u>

Under New Hampshire law, "one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer." <u>Kelleher v. Marvin Lumber & Cedar Co.</u>, 152 N.H. 813, 824 (2005) (internal quotation marks omitted). "If the design of a product makes a warning necessary to avoid an unreasonable risk of harm from a foreseeable use, the lack of warning or an ineffective warning causes the product to be defective and unreasonably dangerous." <u>Chellman v. Saab-Scania AB</u>, 138 N.H. 73, 78 (1993). "Determining whether a product's design is unreasonably dangerous implicates a multifaceted balancing process involving evaluation of many conflicting factors, [including] . . . the presence and efficacy of a warning to avoid an unreasonable risk of harm from hidden dangers or from foreseeable uses." <u>Price v. BIC Corp.</u>, 142 N.H. 386, 389 (1997) (internal quotation marks and citations omitted).

Because "a manufacturer's duty to warn is not limited to intended uses of its product, but also extends to all reasonably foreseeable uses to which the product may be put, . . . [m]anufacturer liability may still attach even if the danger is obvious to a reasonable consumer or if the user employs the product in an unintended but foreseeable manner." <u>Id.</u> at 390.

"The obviousness of the danger should be evaluated against the reasonableness of the steps which the manufacturer must take to reduce the danger."  Id.  "Reasonableness, foreseeability, utility, and similar factors are questions of fact for the jury." Thibault v. Sears, Roebuck & Co., 118 N.H. 802, 809 (1978); accord Vautour v. Body Masters Sports Indus., Inc., 147 N.H. 150, 154 (2001)).

Textron contends that the danger of falling while riding on the back of a golf car was open and obvious and notes various witnesses who have acknowledged they knew of the danger.  Because the danger was not hidden, Textron argues, it had no duty to warn.  In support, Textron cites cases from other states where courts have decided, as a matter of law, that the danger of riding in the back area of a pickup truck and on the tines of a forklift was open and obvious, requiring no warning.

In New Hampshire, however, the duty to warn depends, among other things, on the risk of danger, the degree to which the danger is obvious or hidden, whether the use was foreseeable, and the reasonableness of the manufacturer's actions.  See Price, 142 N.H. at 390; Chellman, 138 N.H. at 77-78.  Such matters present factual questions for the jury unless the outcome cannot be disputed.  Price, 142 N.H. at 390.  Textron has not shown that to be the case here.

The record presented for summary judgment shows that people recognized the risk of riding on the back of golf cars and that people often rode on the back of the cars at the Speedway where the accident happened.[4]  Textron recognized the risk and included an instruction for the operator of the car to have only two passengers that were seated when the car was moving.[5]  William Howerton, an engineer retained by the Speedway and Thompson as an expert, examined the EZ GO golf car and noted that the back of the car looked like a reasonable place to stand.

Based on the record presented, Textron has not demonstrated that it is entitled to judgment as a matter of law, under the legal standard applicable in New Hampshire.

2. Defective Design

Jenks brought a single product liability claim against Textron.  She alleges both that the golf car was "defective in

---

[4]To the extent Textron argues that the danger was open and obvious to Rod Jenks but was not reasonably foreseeable to it, that argument presents an "apparent incongruity" that undermines the defense. Laramie v. Sears, Roebuck & Co., 142 N.H. 653, 657 (1998).

[5]Because the issue is raised only tangentially, the court does not address in this order whether New Hampshire recognizes a continuing duty to warn as presented in the Restatement (Third) of Torts: Product Liability § 10.

its design and manufacture, which rendered it unreasonably dangerous, and amongst other things, the subject cart was unstable and unwieldy and had a propensity to cause disruption to its passengers due to a high center of gravity and unsafe design" and that "there were no warnings posted on the golf cart stating that it was dangerous and unsafe to operate the cart, with a passenger on the back of the cart." Complaint, ¶¶ 66 & 68. Textron moves for summary judgment on the claim to the extent it is based on the first allegation, that the golf car was defectively designed because it was unstable and unwieldy. Jenks did not respond to Textron's motion to dismiss that part of the design defect claim.

A defective design product liability claim requires proof of four elements:

> (1) the design of the product created a defective condition unreasonably dangerous to the user; (2) the condition existed when the product was sold by the seller in the business of selling such products; (3) the use of the product was reasonably foreseeable by the manufacturer; and (4) the condition caused injury to the user or the user's property.

<u>Vautour</u>, 147 N.H. at 153-54. Whether a product is unreasonably dangerous "is determined based on a risk-utility balancing test" that requires the jury to "evaluate many possible factors including the usefulness and desirability of the product to the public as a whole, whether the risk of danger could have been

reduced without significantly affecting either the product's effectiveness or manufacturing cost, and the presence and efficacy of a warning to avoid an unreasonable risk of harm from hidden dangers or from foreseeable uses." Id. at 154.

Textron contends that Jenks would need an expert witness to establish the defective condition of the golf car due to its design. Textron asserts that Dr. Vigilante, Jenks's design defect expert witness, provides opinions about warnings but not about the design of the car with respect to whether it was unstable or unwieldy and cites to Dr. Vigilante's deposition testimony to show the focus of his opinions. As noted above, Jenks did not respond to this part of Textron's motion, and therefore, she provides no contrary evidence or argument.

The cited parts of Dr. Vigilante's deposition testimony indicate that his opinions are limited to defective design of the golf car because of inadequate warnings. The questions of whether the golf car was unstable or unwieldy and whether that condition caused or contributed to cause the accident appear to be beyond the knowledge and experience of average jurors, making expert opinion evidence necessary. See, e.g., Estate of Joshua T. v. State, 150 N.H. 405, 408 (2003). Therefore, in the absence of any contrary evidence or argument, Textron is entitled to summary judgment on Jenks's defective design claim to the extent

it is based on allegations that the golf car was defective because it was unstable or unwieldy.

### 3. Contribution

Textron argues that under New Hampshire law, RSA 507:7-g, a contribution claim cannot be brought as part of the tort action and moves for summary judgment on the contribution claim brought by the Speedway and Thompson.  In its answer to Jenks's complaint, however, Textron brought contribution and indemnification claims against the Speedway and Thompson.  The Speedway and Thompson then moved to amend their answer to assert contribution and cross claims against Textron.  The motion was granted on September 28, 2010, because both Textron and Jenks assented to the motion.

Almost a year later, Textron Financial Corporation moved for summary judgment, arguing in part that the contribution and indemnification claims brought by the Speedway and Thompson were barred as premature by 507:7-g.  The court denied that part of Textron Financial Corporation's motion in an order issued on August 17, 2011, because it was undisputed that Jenks agreed to have the contribution claim brought in the principal action.

Three months later, Textron filed its motion for summary judgment, arguing that the contribution claim is barred as

premature by RSA 507:7-g.  Textron did not acknowledge that Jenks agreed to the contribution claim brought by the Speedway and Thompson or that Textron too brought contribution and indemnification claims in this action.  Textron also did not address the differences within this district about the application of RSA 507:7-g in federal court.

The Speedway and Thompson again point out that Jenks agreed to have the contribution claim brought in this action.  Therefore, Textron's motion for summary judgment on the contribution claim is denied.


4.  Indemnification

Textron contends that a common law indemnification claim can only be brought by a party who is not at fault.  Textron argues that the Speedway and Thompson were at fault in Rod Jenks's accident and that summary judgment must be granted on the indemnification claim.  The Speedway and Thompson do not respond to that part of Textron's motion.

Under New Hampshire law, "'[a] right to indemnity arises where one is legally required to pay an obligation for which another is primarily liable.'"  One Beacon Ins., LLC v. M&M Pizza, Inc., 160 N.H. 638, 643 (2010) (quoting Morrissette v. Sears, Roebuck & Co., 114 N.H. 384, 388 (1974)).  "[O]ne joint

13

tortfeasor can obtain indemnification, a complete shifting of liability, against another where the indemnitee's liability is derivative or imputed by law." Consol. Util. Equip. Servs., Inc. v. Emphart Mfg. Corp., 123 N.H. 258, 261 (1983). In addition, an implied right to indemnification may arise when the fault of the indemnitor is the source of the indemnittee's liability. Hamilton v. Volkswagen of Am., Inc., 125 N.H. 561, 563-64 (1984); accord Jaswell Drill Corp. v. Gen. Motors Corp., 129 N.H. 342, 346 (1987).

Textron contends that implied indemnification does not arise in this case because both the Speedway and Thompson bear responsibility for Rod Jenks's injuries. Textron provides evidence to show that the Speedway was aware of people riding on the back of golf cars, driving golf cars at high speed, and carrying too many people. Textron also cites evidence that Thompson knew it was wrong to allow Rod Jenks to ride on the back of the golf car.

In their cross claims for indemnification against Textron, the Speedway and Thompson both deny any liability and also allege that if either "is determined to be liable in tort to any plaintiff, then such liability is wholly derivative of the fault of Textron, Inc." The Speedway and Thompson do not allege a right of indemnification based on the terms of an agreement with

14

Textron. They also do not explain any basis for derivative liability, which is not apparent given the negligence claim against the Speedway and Thompson and the product liability claim against Textron.

No finding or ruling can be made in the context of this motion with respect to the fault of the Speedway and Thompson in causing the accident that injured Rod Jenks. The record, however, does not support an indemnification claim based on a theory that any liability of the Speedway and Thompson is derivative of the liability of Textron. Therefore, Textron is entitled to summary judgment on the indemnification claim.

## Conclusion

For the foregoing reasons, ABL's motion to join in part of Textron's motion (document no. 148) is granted. Textron's motion for summary judgment (document no. 113) is granted as to that part of Jenks's design defect claim alleging that "the subject cart was unstable and unwieldy and had a propensity to cause disruption to its passengers due to a high center of gravity and unsafe design" and as to the indemnification claim of the Speedway and Thompson. The motion is otherwise denied.

Because that part of Textron's motion seeking summary

15

judgment on the defense of an open and obvious danger is denied, that part of the motion is also denied as to ABL.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

February 13, 2012

cc:  R. Matthew Cairns, Esquire
     James M. Campbell, Esquire
     R. Peter Decato, Esquire
     Dona Feeney, Esquire
     Mark V. Franco, Esquire
     Neil A. Goldberg, Esquire
     John A.K. Grunert, Esquire
     Daniel R. Mawhinney, Esquire
     David S. Osterman, Esquire
     Christopher B. Parkerson, Esquire
     Michael D. Shalhoub, Esquire
     William A. Whitten, Esquire