```
            UNITED STATES DISTRICT COURT FOR THE
                  DISTRICT OF NEW HAMPSHIRE
```

Melissa Jenks, individually,
and as g/n/f of Roderick Jenks

    v.                                   Civil No. 09-cv-205-JD
                                          Opinion No. 2012 DNH 075

New Hampshire Motor Speedway,
Breann Thompson, and Textron, Inc.

    v.

A.B.L., Inc.

### O R D E R

Melissa Jenks, as the guardian and next friend of her husband, Roderick Jenks, and on her own behalf, sued New Hampshire Motor Speedway, Breann Thompson, and Textron, Inc., alleging negligence claims against Thompson and the Speedway and product liability claims against Textron. Textron brought cross claims against the Speedway and Thompson for contribution and indemnification. The Speedway and Thompson brought cross claims against Textron for contribution and indemnification and third-party claims against Textron Financial Corporation and A.B.L., Inc. ("ABL")[1]

---

[1] Summary judgment was granted in Textron Financial Corporation's favor on the third-party claims against it.

In anticipation of trial, the court ordered briefing on the issue of whether New Hampshire would recognize a continuing duty to warn as provided by § 10 of the Restatement (Third) of Torts: Products Liability (1998) ("Restatement: PL").  Jenks filed a motion supported by a memorandum of law to allow evidence and instruction on the continuing duty to warn.  The Speedway and Thompson filed a memorandum in support of the continuing duty to warn.  Textron filed an objection to the plaintiffs' motion, and Jenks, the Speedway, and Thompson have filed replies.  Textron filed a surreply.

## Discussion

As addressed in the motion and memoranda, the issues to be resolved here are:  1) whether New Hampshire would recognize a post-sale or continuing duty to warn in products liability cases, and 2) whether evidence of a continuing duty to warn will be allowed, accompanied by an appropriate jury instruction on that issue at the conclusion of the case.

A. New Hampshire Law

When this court sits in diversity jurisdiction, the substantive law of the forum state governs the decision.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). "Where the highest

[state] court has not spoken directly on the question at issue, [the federal court] must predict, as best [it] can, that court's likely answer."  Nolan v. CN8, 656 F.3d 71, 76 (1st Cir. 2011). The prediction is based on the state supreme court's analogous decisions, any decisions of lower state courts, and other reliable sources such as the decisions of other courts and commentary in treatises.  See Barton v. Clancy, 632 F.3d 9, 17 (1st Cir. 2011); Acosta-Mestre v. Hilton Int'l of P.R., Inc., 156 F.3d 49, 54 (1st Cir. 1998).

Textron argues that a lack of New Hampshire Supreme Court precedent adopting a post-sale or continuing duty to warn bars that theory in this case.  Textron misunderstands the difference between this court's obligation under diversity jurisdiction to apply established New Hampshire law and its related duty to proceed when governing precedent is lacking.[2]  While a federal

---

[2]Textron faults Jenks for asking this court to address a novel issue of state law.  Federal courts "'must be hesitant to blaze a new (and contrary) trail'" in state law.  Hatch v. Trail King Inds., Inc., 656 F.3d 59, 70 (1st Cir. 2011) (quoting Warren v. United Parcel Serv., Inc., 518 F.3d 93, 100 (1st Cir. 2008)). When a novel issue is raised and the pertinent state law is unsettled, it might be necessary to certify the question to the New Hampshire Supreme Court.  See, e.g., Am. States Ins. Co. v. LaFlam, 672 F.3d 38, 44 (1st Cir. 2012); Hungerford v. Jones, 988 F. Supp. 22, 25 (D.N.H. 1997).  Notably, Textron did not ask that the question be certified to the New Hampshire Supreme Court in response to Jenks's motion and instead argued, based on existing precedent, that the supreme court has not and would not adopt a

court cannot change existing state law by adopting new exceptions, see Katz v. Pershing, LLC, --- F.3d ---, 2012 WL 612793, at *6 (1st Cir. Feb. 28, 2012), when precedent is lacking, a federal court must predict, if possible, the course the state court would take, Barton, 632 F.3d at 17.  See also Gonzalez Figueroa v. J.C. Penney P.R., Inc., 586 F.3d 313, 322 (1st Cir. 2009); Jenks v. New Hampshire Motor Speedway, et al., Civil No. 09-cv-205-JD, Op. No. 2012 DNH 009, at *4-*8 (Jan. 11, 2012).  Therefore, the absence of governing precedent in New Hampshire on the issue of a continuing duty to warn of a product defect does not necessarily preclude that theory in this case.

    The product liability theory of a post-sale or continuing duty to warn is set forth in § 10 of the Restatement: PL.  Under § 10, a seller or distributor is liable "for harm to persons or property caused by the seller's failure to provide a warning after the time of sale or distribution of a product if a reasonable person in the seller's position would provide such a warning."  When the Restatement: PL was published in 1998, "[j]udicial recognition of the seller's duty to warn of a product-related risk after the time of sale, whether or not the product is defective at the time of original sale within the

---

continuing duty to warn.

meaning of other Sections of this Restatement, [was] relatively new." Id., § 10, cmt. a.

Previously in this case, the court predicted that the New Hampshire Supreme Court would follow § 1 and § 20(b) of the Restatement: PL which expand strict liability to, among others, commercial lessors of defective products. See Order, doc. no. 146, Op. No. 2012 DNH 009 at *4-*8. In that order, the court reviewed the New Hampshire Supreme Court's precedent in the area of products liability along with decisions from other courts and concluded that the supreme court would impose strict liability on commercial lessors of defective products. The same standard for predicting the New Hampshire Supreme Court's likely course with respect to a post-sale or continuing duty to warn applies here.

The New Hampshire Supreme Court has not addressed this issue directly in product liability cases. In McLaughlin v. Fisher Eng'g, 150 N.H. 195 (2003), the plaintiffs brought a product liability suit against the manufacturer of a snowplow mount, seeking damages for enhanced injuries allegedly caused by the mount in an accident. The plaintiffs sought to introduce evidence of fourteen post-sale lawsuits against Fisher to prove that the asserted defect existed, that the defect caused a risk of harm, and that Fisher knew or should have known of the danger. Id. at 197. The trial court ruled that the post-sale lawsuits

were not relevant unless the plaintiffs "'were to establish the criteria concerning a duty to warn after the sale.'"[3]  Id. (quoting trial court).  The trial court ultimately excluded the evidence of other lawsuits except for certain statements made by Fisher in the prior lawsuits to the extent that "the plaintiffs qualified those statements as admissions."  Id.

On appeal, the supreme court stated: "We agree with the plaintiffs that evidence of other lawsuits was relevant to the issue of Fisher's knowledge that the snowplow mount was potentially dangerous."  Id. at 198.  The court held, however, that the evidence was not necessary because Fisher had admitted its knowledge of the danger and that the plaintiffs were not unreasonably prejudiced by its exclusion.  Id.  In addition, the court noted that the evidence about other lawsuits "was likely to produce a trial within a trial and confuse the jury."  Id.  As such, the issue of whether the theory of continuing duty to warn was viable under New Hampshire law was not presented.  It is apparent, however, that in McLaughlin the supreme court assumed it to be a valid theory of liability.

In Cheshire Med. Ctr. v. W.R. Grace & Co., 853 F. Supp. 564, 567 (D.N.H. 1994), the federal district court instructed the jury

---

[3]The case does not explain what criteria were necessary to establish a duty to warn after the sale.

in a products liability case that the defendant had a continuing duty to warn of dangers associated with the product even after it had been sold.  The validity of that theory was not challenged.  Therefore, the court had no occasion to consider whether the New Hampshire Supreme Court would recognize that theory.

In Tate v. Robbins & Myers, Inc., 790 F.2d 10 (1st Cir. 1986), the First Circuit considered an appeal in a products liability case from the District of New Hampshire in which the plaintiff proceeded on theories of an inadequate warning at the time of sale and a breach of the continuing duty to warn.  The trial court had excluded a post-sale manual, as evidence of the breach of the continuing duty to warn, on the ground that the plaintiff failed to provide evidence that the plaintiff had notified the manufacturer of his purchase of the machine.  Id. at 11-12.  The court affirmed on appeal.  As in Cheshire Med., the case proceeded on a continuing duty to warn theory without a challenge to that theory.  It is apparent that the theory was accepted by both the trial and appellate courts.

In support of its argument that a continuing duty to warn is not consistent with New Hampshire law, Textron relies on decisions that pre-date the Restatement: PL and are based on product liability as provided in the Restatement (Second) of

Torts.[4]  See, e.g., Thibault v. Sears, Roebuck & Co., 118 N.H. 802, 807 (1978); McLaughlin v. Sears, Roebuck & Co., 111 N.H. 265, 267 (1971).  Textron further argues that the New Hampshire Supreme Court has recognized only a narrow version of product liability.  Textron notes that the supreme court has not imposed liability on successors to a product's manufacturer based on a "product line" theory, Simoneau v. S. Bend Lathe, Inc., 130 N.H. 466, 469-70 (1988), and has not imposed liability for defects that were "scientifically unknowable" at the time of sale, Heath v. Sears, Roebuck & Co., 123 N.H. 512, 530 (1983).

Textron also contends that the New Hampshire Supreme Court's decision in Vautour v. Body Masters Sports Indus., Inc., 147 N.H. 150 (2001), demonstrates the court's narrow view of product liability.  In Vautour, the supreme court rejected § 2(b) of the Restatement: PL, which requires plaintiffs to present evidence of a safer alternative design as part of the proof of a design defect claim.  Id. at 155.  The court noted "considerable controversy" about § 2(b) that stemmed "from the concern that a reasonable alternative design requirement would impose an undue burden on plaintiffs because it places a potentially insurmountable stumbling block in the way of those injured by

---

[4]Products liability under § 402-A of the Restatement (Second) of Torts references the seller of a defective product.

badly designed products." Id. (internal quotation marks omitted). The court also noted the practical problems of applying § 2(b) and that applying § 2(b) would over-emphasize one aspect of the risk-utility analysis. Id. at 156. Therefore, the New Hampshire Supreme Court maintained a broader view of product liability by rejecting § 2(b). Vautour does not support Textron's argument.

Under New Hampshire law, a manufacturer of a product is strictly liable for injury caused by the product's defective design if "'the design of the product created a defective condition unreasonably dangerous to the user.'" Price v. BIC Corp., 142 N.H. 386, 389 (1997) (quoting LeBlanc v. Am. Honda Motor Co., Inc., 141 N.H. 579, 585 (1997)). One aspect of a defective design claim is "the presence and efficacy of a warning to avoid an unreasonable risk of harm from hidden dangers or from foreseeable uses." Price, 142 N.H. at 389. "[A] manufacturer's duty to warn is not limited to intended uses of its product, but also extends to all reasonably foreseeable uses to which the product may be put." Id. at 390.

In this case, the alleged defect is the danger of falling when riding on the back of the golf car manufactured and sold by Textron. Jenks, the Speedway, and Thompson contend that the danger associated with riding on the back of the car existed at

the time Textron sold the car, obligating Textron to provide a warning at the time of sale. They also contend that as more information about the danger of riding on the back its golf cars became available and known to Textron, it had a continuing duty to provide a warning. Therefore, as alleged, the defect existed in the car and was known by Textron when the car was sold and, or alternatively, Textron learned of the defect or gained information about the defect after the car was sold. The question is whether Textron had a continuing duty to provide a warning about the danger of riding on the back of the car.

Other jurisdictions that have considered this question have concluded, under both strict liability and negligence causes of action, that the seller or manufacturer of a defective product has a continuing or post-sale duty to warn of the defect, at least when it would be reasonable to provide such a warning. See, e.g., Brown v. Crown Equip. Co., 554 F.3d 34, 36 (1st Cir. 2009) (Maine Supreme Judicial Court found continuing duty to warn under negligence theory); Robinson v. Brandtjen & Kluge, Inc., 500 F.3d 691, 697 (8th Cir. 2007) (recognizing post-sale duty to warn in negligence and under § 10 of Restatement: PL); Ahlberg v. Chrylser Corp., 481 F.3d 630, 633 (8th Cir. 2007) (recognizing post-sale duty to warn in negligence and strict product liability); Dowdy v. Coleman Co., Inc., 2011 WL 6151432, at *3

(D. Utah Dec. 12, 2011); In re Avandia Mktg., Sales Practices & Prods. Liability Litig., 817 F. Supp. 2d 535, 547-48 (E.D. Penn. 2011); Reiss v. Komatsu Am. Corp., 735 F. Supp. 2d 1125, 1150 (D.N.D. 2010); Snoznik v. Jeld-Wen, Inc., 2010 WL 1924483, at *22 (W.D.N.C. May 12, 2010); Quist v. Sunbeam Prods., Inc., 2010 WL 1665254, at *4-*5 (D. Minn. Apr. 22, 2010); Wendorf v. JLG Indus., Inc., 683 F. Supp. 2d 537, 546-47 (E.D. Mich. 2010); Murphy v. Ford Motor Co., Inc., 2009 WL 2998960, at *5 (W.D. La. Sept. 14, 2009); Rash v. Stryker Corp., 589 F. Supp. 2d 733, 736 (W.D. Va. 2008); Toms v. J.C. Penney Co., Inc., 2007 WL 2893052, at *7 (D.N.J. May 23, 2008); Tabor v. Metal Ware Corp., 168 P.3d 814, 818 (Utah 2007); Lewis v. Ariens Co., 751 N.E.2d 862, 866-67 (Mass. 2001); Lovick v. Wil-Rich, 588 N.W.2d 688, 693-94 (Iowa 1999); Liriano v. Hobart Corp., 92 N.Y.2d 232, 240-41 (N.Y. 1998).

Jenks argues, alternatively, that a continuing duty to warn is part of existing negligence law in New Hampshire. Textron contends that even if such a duty exists, a continuing duty to warn as a negligence claim was not pleaded in Jenks's amended complaint or by the Speedway and Thompson. For that reason, Textron asserts that a continuing duty to warn as a negligence theory cannot be considered in this case.

Based on the New Hampshire cases, New Hampshire's product liability law, related federal cases, and the reasoning of many other jurisdictions, this court can predict that the New Hampshire Supreme Court would recognize a continuing duty to warn of a product defect under § 10 of the Restatement: PL as a strict product liability claim. While the New Hampshire Supreme Court might also find a continuing duty to warn under a negligence theory, it is not necessary to make that prediction in this case. A product liability claim asserting a continuing duty to warn under § 10 is cognizable in this case.

B.  Evidence and Jury Instruction

The plaintiffs, the Speedway, and Thompson also ask that they be allowed to present evidence on the continuing duty to warn and that the jury be instructed on that theory. To succeed on a claim under § 10, the plaintiffs, the Speedway, and Thompson must show that a reasonable person in Textron's position would provide a post-sale warning. Restatement: PL § 10(a). Whether a reasonable person would provide such a warning depends on proof that:

> (1) the seller knows or reasonably should know that the product poses a substantial risk of harm to persons or property; and
> (2) those to whom a warning might be provided can be identified and can reasonably be assumed to be unaware

>of the risk of harm; and
>(3) a warning can be effectively communicated to and acted on by those to whom a warning might be provided; and
>(4) the risk of harm is sufficiently great to justify the burden of providing a warning.

Id. § 10(b). "As with all rules that raise the question whether a duty exists, courts must make the threshold decisions that, in particular cases, triers of fact could reasonably find that product sellers can practically and effectively discharge such an obligation and that the risks of harm are sufficiently great to justify what is typically a substantial post-sale undertaking." Id. cmt. a. Therefore, "[i]n deciding whether a claim based on a breach of a post-sale duty to warn should reach the trier of fact, the court must determine whether the requirements in Subsection (b)(1) through (4) are supported by proof." Id.

Textron originally sold the golf car that was involved in the accident at issue in this case in 1997 but then repurchased it. In 2001, Textron sold the car to its authorized dealer, A.B.L., Inc. A.B.L leased the car, along with many others, to the Speedway for use during the race weekend in July of 2006, when Roderick Jenks fell from the back of the car and was seriously injured. Textron acknowledges that the only statement pertaining to riding on the back of the car was on a decal

affixed to the dashboard of the car, which would not warn someone who was riding on the back.

Jenks, the Speedway, and Thompson proffer evidence to show that Textron was aware of the danger of riding on the back of the car when the car was sold and that it received additional information about that danger after the car was sold. They refer to the information about golf car accidents compiled by the National Electronic Injury Surveillance Systems database and contend that information was available to and known by Textron executives.

In addition, an attorney representing the family of a person who was killed when he fell off of the back of a Textron golf car sent a letter to Textron in July of 2003. The family asked Textron to put a warning on the back of its golf cars to prevent additional fatalities. Textron's assistant general counsel asked for more details but apparently did not pass along the information within Textron. When the National Consumer Product Safety Commission investigated that accident, Textron's counsel claimed that the family and their attorney had not been cooperative.

Jenks, the Speedway, and Thompson also provide evidence that Textron knew that A.B.L. owned the golf car and had means to easily identify to whom a warning should be given. They note

that when the decal affixed to the dashboard of the cars deteriorated, A.B.L. would ask Textron to provide new decals. They also represent that Textron began putting warnings on the back of its golf cars in 2008.

Textron contends that § 10 does not apply in this case because Roderick Jenks, the Speedway, and Thompson were aware of the risk of riding on the back of the car.  Section 10(b)(2) provides that a reasonable person would provide a post-sale warning if "those to whom a warning might be provided can be identified and can reasonably be assumed to be unaware of the risk of harm."  Although Textron provides evidence that some Speedway employees, including Thompson, were aware that riding on the back of a golf car could be dangerous, there is evidence that people often did ride on the back of golf cars, suggesting a lack of awareness of the danger.  Roderick Jenks's experience as a school bus driver does not show, in and of itself, that he understood the danger of riding on the back of a golf car.

In addition, § 10(b) applies to what a reasonable seller would assume, not to what the victim actually knew or thought. Textron included a warning not to allow riders on the back of the car as part of the decal on the golf car's dashboard, which suggests that Textron assumed those who used its cars were not aware of the danger of riding on the back.  Textron also added a

warning to the back of its golf cars in 2008.  Therefore, a reasonable seller of golf cars could have assumed a warning was necessary.

Textron has not shown that § 10(b)(2) bars claims based on a continuing duty to warn in this case.  Jenks, the Speedway, and Thompson have provided a sufficient showing to be permitted to present evidence in support of a products liability claim against Textron based on a continuing duty to warn theory.  Whether a jury instruction will be given on the claim depends on whether the claim survives a motion for a directed verdict, if such a motion is made.

## Conclusion

For the foregoing reasons, the plaintiff's motion to allow evidence and instruction on the continuing duty to warn (document no. 159) is granted to the extent that a product liability claim under § 10 of the Restatement: PL is cognizable in this case.  Jenks, the Speedway, and Thompson will be permitted to present evidence at trial on that claim.  If the claim goes to the jury, an appropriate instruction will be given.

At this juncture, the claims, cross claims, and counterclaims are established.  The court urges the parties to realistically evaluate their claims and defenses and to consider

the risks and costs of trial.  With those matters in mind, the parties are expected to use their best efforts to resolve all or part of this case before trial.

SO ORDERED.

                                              Joseph A. DiClerico, Jr.
                                              United States District Judge

April 23, 2012

cc:  R. Matthew Cairns, Esquire
     James M. Campbell, Esquire
     R. Peter Decato, Esquire
     Dona Feeney, Esquire
     Mark V. Franco, Esquire
     Neil A. Goldberg, Esquire
     John A.K. Grunert, Esquire
     Daniel R. Mawhinney, Esquire
     David S. Osterman, Esquire
     Christopher B. Parkerson, Esquire
     Michael D. Shalhoub, Esquire
     William A. Whitten, Esquire