UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Melissa Jenks, Individually
and as Guardian and Next
Friend of Roderick Jenks</u>


     v.                               Civil No. 09-cv-205-JD
                                        Opinion No. 2012 DNH 119

<u>Textron, Inc.</u>


O R D E R

     Melissa Jenks alleges a product liability warning claim on
behalf of her husband, Roderick Jenks, and a loss of consortium
claim on her own behalf against Textron, Inc.[1]  In anticipation
of trial, Textron moves in limine to preclude the Jenkses from
introducing evidence of and from making reference to a prior
accident involving an E-Z-Go golf car and the investigation and
report of that accident by the Consumer Product Safety Commission
("CPSC").  Textron also moves to preclude certain testimony or
all of the testimony of its in-house counsel, John Rupp.
Further, Textron moves to exclude evidence of subsequent remedial
measures.  The Jenkses object to all four motions.

---

     [1]Most of the other claims, cross claims, and counterclaims
in this case have been resolved either by the court or by the
parties.

Background

Roderick Jenks was seriously injured in July of 2006 when he fell from the back of an E-Z-Go golf car that was manufactured and sold by Textron.  At the time of the accident, the golf car had a label on the dashboard instructing the driver that all occupants must be seated and may have had a sticker on the steering wheel, advising the driver to carry only the number of passengers for whom there were seats.  There was no warning on the back of the golf car.

In July of 2003, Attorney Mark Pinnie wrote to Textron to report that John Hall had fallen from the back of an E-Z-Go golf car and had died from his injuries.  The accident occurred in May of 2003 at the Forest Crossing Golf Course in Franklin, Tennessee.  Pinnie explained that the Hall family asked Textron to place a label on the rear of its golf cars, warning individuals that death or serious injury could occur if they rode on the back of the car.  Pinnie further stated that a warning would provide notice of the danger of riding on the back and would deter others from riding on the back of golf cars, which occurred frequently.

John Rupp, senior associate general counsel at Textron, responded to the letter, asking for more information about the accident.  Pinnie wrote back to Rupp to provide more detail about

2

the accident.  A few weeks later, he wrote to Rupp again and included an email from John Hall's daughter, Margie Hall Duerr, who provided more specific details about the circumstances of the accident, her father's injury, and his death.  Pinnie explained that the Hall family was not interested in legal action against Textron.  Rupp wrote to Pinnie that Hall's accident was "markedly different" from Textron's knowledge of accidents involving E-Z-Go cars and that Gerald Powell, Textron's manager of product reliability, would present the Halls' request for a warning to the National Golf Car Manufacturers Association ("NGCMA").

Rupp requested copies of previous correspondence with Pinnie in November of 2003.  Pinnie sent the requested information and asked when the NGCMA meeting would be held.  Pinnie further stated that the Hall family's only interest was to have safety improvements made to the golf car but that with a one-year statute of limitations in Tennessee the family needed "some concrete dates."  Rupp responded that the Hall family's threat and effort to intimidate Textron was very disturbing.  Rupp also stated that a warning decal might actually hamper safety efforts. Rupp further stated that he had not received the accident information that he had requested from the Hall family.

Rupp gave Powell a copy of Rupp's first letter to Pinnie sent in July, in which he asked for details about the accident,

and directed Powell to raise the issue of a warning at a meeting of the American National Standards Institute ("ANSI").  Rupp did not give Powell the details about the accident that had been provided to him by Pinnie and Duerr.  Powell raised the warning issue at an ANSI engineering standards committee meeting but lacked the specific information about the accident that Pinnie and Duerr had sent to Rupp.  The committee could not consider the warning issue without the details about Hall's accident.  Powell testified at his deposition that he could not evaluate the warning the Hall family requested without more information about the accident.

    The Hall family then requested an investigation by the CPSC. The CPSC undertook an investigation of the accident.  As part of the investigation, Textron was asked to comment on the accident and present its response.  Rupp, on behalf of Textron, responded that other than the fact that John Hall had fallen while riding on the back of an E-Z-Go car, Pinnie had been "non-communicative" about the details of the accident which were necessary for Textron to evaluate whether a warning was needed.  He stated that Powell had presented the Hall family's warning request to the NGCMA but that the NGCMA needed information about what happened in that incident to decide whether a warning would be effective.

Rupp also said that the E-Z-Go division was not aware of anyone riding on the rear platform of its cars.

The CPSC issued a report on the accident but did not reach a conclusion about the safety of the golf car.  Textron did not provide a warning on the back of its golf cars at that time. Several years later, Textron did include a warning imprint on the back of its 2008 RXV and 2010 TXT model golf cars.  The warning imprint was "No Step/Rider."

In its final pretrial statement, Textron proposes a stipulation that "Textron had actual knowledge of 1 instance of serious injury from falling off the back of a moving golf car as of 2003."  Textron also proposes to stipulate that: "It was foreseeable to Textron that persons might misuse a golf car by overloading a golf car by riding in places other than the seats." In its motion in limine to preclude evidence of the John Hall accident, Textron proposes "to stipulate to having knowledge or 'notice' of the Hall Incident."  Doc. no. 185 at 3.  In its motion to exclude evidence of subsequent remedial measures, Textron states that it does not dispute the feasibility of adding the "No Step/Rider" warning.

I.  <u>Evidence of the Hall Accident</u>

Textron argues that all references, evidence, and testimony pertaining to John Hall's accident should be precluded at trial because Textron has provided a "stipulation" on the issue of notice.[2]  Textron contends that the Hall accident evidence lacks probative value, is irrelevant and "unduly prejudicial," is inadmissible hearsay, includes inadmissible lay opinions, is inadmissible "other accident" evidence, and would violate the attorney client and work product privileges.

The Jenkses respond that the probative value of the evidence of John Hall's accident must be considered in light of Textron's past testimony about its knowledge of the danger and need for a warning.  The Jenkses argue that Textron's proposed stipulations are insufficient to address the issue of whether Textron acted reasonably in failing to provide a post-sale warning in light of the information about the danger and misuse of golf cars that was available to Textron.  In response to Textron's evidentiary objections, the Jenkses contend that the Hall accident evidence is not hearsay because it is not offered for its truth but instead to show that Textron had notice of the accident, that the Hall accident is sufficiently similar to Roderick Jenks's

_____

[2]Although Textron refers to a stipulation, the Jenkses have not agreed to Textron's proposal.

accident to provide evidence of notice, that no lay opinion
testimony is offered, that the evidence is not unfairly
prejudicial, and that the evidence does not implicate privileged
information.

      A.  <u>Effect of a Proposed Stipulation</u>

Textron asserts that its proposed stipulation that it knew
of the Hall accident bars Jenks from introducing any evidence
pertaining to the accident at trial.  In support, Textron argues
that such a stipulation would simplify the evidence at trial and
avoid unfair prejudice.  The Jenkses do not accept the
stipulation and argue that the evidence pertaining to the
accident remains relevant despite such an admission by Textron.

The effect of a proposed stipulation by one party raises
both evidentiary and procedural issues.  <u>See</u> 22 C. Wright & K
Graham, <u>Federal Practice and Procedure</u> § 5194 (1978).  Whether
the court can compel a party to accept a stipulation by the
opposing party, and thereby limit the evidence that will be
presented at trial, implicates Federal Rules of Evidence 104(a),
401, 403, and 611(a) and Federal Rule of Civil Procedure
16(c)(2).  <u>See</u> <u>id.</u>; <u>see also</u> <u>Briggs v. Dalkon Shield Claimants</u>
<u>Tr.</u>, 174 F.R.D. 369, 372-76 (D. Md. 1997).  Federal Rule of
Evidence 401 does not restrict relevance to evidence directed at

disputed facts.[3]  See Fairshter v. Am. Nat'l Red Cross, 322 F.
Supp. 2d 646, 653 (E.D. Va. 2004).  The court, however, may
exclude even relevant evidence "if its probative value is
substantially outweighed by a danger of one or more of the
following: unfair prejudice, confusing the issues, misleading the
jury, undue delay, wasting time, or needlessly presenting
cumulative evidence."  Fed. R. Evid. 403.

Textron argues that the Hall accident evidence lacks
probative value because it does not show how Mr. Jenks was
injured or whether a warning on the back of the E-Z-Go golf car
would have prevented Mr. Jenks's accident.  The Jenkses, however,
do not intend to offer the evidence for those purposes.  Instead,
the Jenkses argue that evidence of the Hall accident and
Textron's response to the accident show that Textron did not act
reasonably in failing to provide a warning after the Hall
accident.

To succeed on their post-sale warning claim, the Jenkses
must prove, among other things, that a reasonable seller of golf

---

[3]Instead, the Advisory Committee Notes following Rule 401
state: "The fact to which the evidence is directed need not be in
dispute.  While situations will arise which call for the
exclusion of evidence offered to prove a point conceded by the
opponent, the ruling should be made on the basis of such
considerations as waste of time and undue prejudice (see Rule
403), rather than under any general requirement that evidence is
admissible only if directed to matters in dispute."

cars in Textron's position would have provided a warning.  See
Restatement (Third): Products Liability § 10(a).  Considerations
as to whether a reasonable seller in Textron's position would
have provided a warning include whether a reasonable seller knew
or should have known that the E-Z-Go golf car posed a substantial
risk of harm to persons and that the risk of harm was
sufficiently great to justify the burden of providing a warning.
Id. § 10(b).

The Jenkses contend that Textron's response to the Hall
accident shows that it did not act reasonably in response to the
notice of a fatal accident involving the E-Z-Go car, that it had
information about people riding on the back of golf cars, and
that it rejected the Hall family's request that a warning be
placed on the back of golf cars without appropriate consideration
and investigation.  They argue that Textron's response shows that
Textron did not act reasonably because a reasonable seller of
golf cars in Textron's position would have provided a warning.

The Hall accident evidence provides information about what
Textron knew as to the risks associated with the E-Z-Go golf car
before Roderick Jenks's accident.  The evidence the Jenkses
intend to introduce tends to show that Textron did not actually
consider providing a warning, obfuscated the issue of a warning
as presented to ANSI and NGCMA, and evaded the CPSC investigation

9

of the accident.[4]  The Jenkses contend that a reasonable seller would have acted differently.  As such, the evidence is probative of whether a reasonable seller in Textron's position would have provided a warning, which is an element of the post-sale duty to warn.

Textron asserts, however, that the Hall accident evidence would cause undue delay because Textron would be required to counter the evidence with testimony from witnesses to show a lack of connection between the two accidents and that the Hall accident does not prove the lack of a warning caused Mr. Jenks's accident.  Textron suggests that the Hall accident evidence and Textron's responsive evidence would be time consuming, would require a mini-trial of the Hall accident, and would likely confuse the jury.

As is explained above, the Hall accident evidence is not offered or admissible to show how Mr. Jenks was injured or whether the lack of an effective warning on the car caused Mr. Jenks's injury.  Instead, the Hall accident evidence is offered and admissible to show that a reasonable seller of golf cars in Textron's position would have provided a warning because Textron

---

[4] The same evidence may be relevant to enhanced compensatory damages, if that theory survives Textron's motion to dismiss.

had notice of a fatal accident involving an E-Z-Go car and the Hall family requested a warning for a danger they believed commonly occurred.   Therefore, proof of the details of the Hall accident beyond what was provided to Textron at the time is not likely to be relevant.

The evidence pertaining to Textron's conduct in failing to provide all of the information it had at the time about the Hall accident to the NGCMA and ANSI and its response to the CPSC investigation presents somewhat different considerations.   That evidence tends to show that Rupp understood the import of the Hall accident and decided to hide the information he had received.   Instead of undertaking an investigation of the warning issue in response to the Hall accident, Rupp allegedly obfuscated any process provided by the NGCMA, ANSI, and CPSC that might have resulted in a requirement or recommendation that Textron provide a warning.   As presented by the Jenkses, Rupp's actions are probative of whether Textron had notice of a substantial risk of harm and whether a reasonable seller in Textron's position would have provided a warning.

Rupp's alleged actions in response to the Hall accident do not portray Textron in a positive light, and Textron contends that the evidence is prejudicial.   The pertinent question to be addressed, however, is whether the evidence is <u>unfairly</u>

11

prejudicial and whether the risk of unfair prejudice is
outweighed by the probative value of the evidence.  Fed. R. Evid.
403.

Textron's proposed stipulation does not concede the extent
of its knowledge and its appreciation of the risk of falling from
the back of a golf car or its conduct in response to the Hall
accident.  The Hall accident evidence is not subject to
collateral challenges as to its accuracy because it is not
offered for its truth but only to show what information the Hall
family provided to Textron and what request they made.  The
probative value of the Hall accident evidence and Textron's
response is not substantially outweighed by "a danger of one or
more of the following: unfair prejudice, confusing the issues,
misleading the jury, undue delay, wasting time, or needlessly
presenting cumulative evidence."  Fed. R. Evid. 403.


B.  <u>Other Challenges to the Evidence</u>

Textron also seeks to exclude the Hall accident evidence on
the grounds that it is inadmissible hearsay, impermissible lay
opinion, "other accident" evidence, and a violation of attorney-
client privilege and the work product doctrine.  The Jenkses
object, explaining that because the evidence will be introduced
for the limited purpose of showing Textron's notice of a fatal

12

accident involving the E-Z-Go golf car, most of the evidentiary issues Textron raises are not implicated.  The Jenkses also argue that the Hall accident meets the requirements for "other accident" evidence and that attorney-client privilege and the work product doctrine are not a concern.

Hearsay is a statement made outside of a court proceeding that is offered "to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  Textron argues that the details about John Hall's accident are hearsay because they are based on reports from people who will not testify.  That information is not being offered for its truth, however, but instead to show the notice the Hall family provided to Textron about the accident.

Textron also objects to certain statements by Margie Duerr as inadmissible lay opinions.  Textron contends that Duerr's remarks about the need for a warning on the golf car, Pinnie's statement of the Hall family's request for a warning, and the Hall family's opinion that Textron should provide a warning are all inadmissible lay opinions because they require specialized knowledge that Duerr, Pinnie, and other members of the Hall family lack.  See Fed. R. Evid. 701.

The Hall family's request that Textron provide a warning on its golf cars, which includes their "opinion" that a warning was

necessary, is not offered to show that a warning was actually necessary but to show the circumstances in which Textron chose not to provide a warning.  If called to testify at trial, Duerr and Pinnie cannot testify that a warning was necessary to avoid accidents in the future, but they can testify about what they told Textron in support of the request for a warning.  Textron can request a limiting instruction if that becomes necessary and appropriate and shall be prepared to submit one to the court in writing if Textron intends to make such a request.

Evidence of other accidents offered to show the defendant's knowledge of prior accidents, the existence of a design defect, causation, and negligent design is admissible "only if the proponent of the evidence shows that the accidents occurred under circumstances substantially similar to those at issue in the case at bar." McKinnon v. Skil Corp., 638 F.2d 270, 277 (1st Cir. 1981).  The requirement of substantial similarity is relaxed when the other accident evidence is used to show notice or awareness of a defect.  See U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd., 582 F.3d 1131, 1148 (10th Cir. 2009); Surles ex rel. Johnson v. Greyhound Lines, Inc., 474 F.3d 288, 297-98 (6th Cir. 2007) (citing cases); Joy v. Bell Helicopter Textron, Inc., 999 F.2d 549, 555 (D.C. Cir. 1993); Bado-Santana v. Ford Motor Co., 482 F. Supp. 2d 197, 200 (D.P.R. 2007); United Oil

<u>Co., Inc. v. Parts Assocs., Inc.</u>, 227 F.R.D. 404, 412 n.4 (D. Md. 2005).

Textron argues that the Jenkses cannot prove the details of the Hall accident through hearsay and that certain details of the accident are not similar to Roderick Jenks's accident. Textron does not dispute that John Hall died due to injuries he sustained after falling off the back of an E-Z-Go golf car. Those bare facts about the incident could give notice to Textron that people rode on the back of E-Z-Go golf cars and that the risk of harm in falling off the back of a car was substantial. The differences in details pertaining to the two accidents might preclude the evidence if it were offered for a different purpose but do not affect the use of the evidence to show notice.

Textron contends that the letters sent by John Rupp pertaining to the Hall accident are unduly prejudicial because they are taken out of context and if Textron were to explain the context the explanation would implicate attorney-client privilege and the work product doctrine. Textron's abbreviated argument on this issue is not persuasive. Textron has filed a separate motion to exclude Rupp's testimony, and its objections to that evidence are better considered in that context.

II.   <u>Evidence of the CPSC Investigation</u>

Textron moves to preclude all evidence and references to the CPSC investigation and the CPSC report on John Hall's accident. Textron contends that the report is inadmissible hearsay and that the report and the fact that the CPSC investigated the accident are irrelevant and "highly prejudicial."  The Jenkses respond that they do not intend to introduce the CPSC report for its truth but instead to show the notice Textron had about the risk of danger of falling from the back of its golf car.  They state that they intend to introduce the report and evidence of the CPSC investigation to show that Textron did not act reasonably in deciding not to provide a warning.

If the CPSC report were offered to show a defective condition, causation, or negligent design, it would be inadmissible hearsay.  <u>McKinnon</u>, 638 F.2d at 278.  Because that is not what the Jenkses intend to offer the report to prove, it would not be barred as inadmissible hearsay.

The CPSC report is relevant to show Textron's notice of the Hall accident.  Because the Jenkses have other evidence that shows Textron's notice of the Hall accident, however, the CPSC report would be cumulative evidence of notice.  In addition, because the report merely repeats others' statements about the Hall accident, it provides little or nothing beyond the other

16

evidence of the Hall accident that Textron received from Pinnie. Given the cumulative evidence of notice, the report's probative value of notice is diminished.  Under Rule 403, the CPSC report itself will not be admissible at trial, and witnesses shall be instructed not to mention it.

Evidence that the CPSC investigated the accident is probative to show notice of the accident but also to show the significance of the accident and the circumstances in which Textron decided not to provide a warning.  Specifically, Rupp's letter to Ann DeTemple at the CPSC shows Textron's response to the investigation of the accident by the CPSC.  Textron's response to the CPSC is probative of the circumstances in which Textron decided not to provide a warning in response to the Hall accident.  In that context, the specific evidence of Textron's response to the CPSC investigation is not cumulative of the other Hall accident evidence.

As such, the probative value of the evidence of Textron's response to the CPSC investigation is not outweighed by the risk of unfair prejudice.  Therefore, that evidence is not precluded.


III.  <u>John Rupp's Testimony</u>

Textron moves to preclude certain testimony of John Rupp, or in the alternative, all testimony by Rupp.  John Rupp is

17

Textron's senior associate general counsel.  Textron states that "there is no relevant, admissible, non-privileged information about which Mr. Rupp can testify."  More specifically, Textron tentatively acknowledges that Rupp's communications with third parties, such as Mark Pinnie and the CPSC, would not be protected by privilege but seeks to protect testimony about Textron's decision to add a warning to golf cars, efforts to evaluate or improve warnings, research on whether people were riding on the back of golf cars, communications with employees about the National Electronic Injury Surveillance System, any research done by Textron or Rupp into the Hall accident, and Rupp's discussions with other Textron employees about the Hall accident.  Textron argues, however, that any inquiry into the process related to providing warnings on the E-Z-Go golf cars would risk inadvertent disclosure of privilege or confidential information.

A.   <u>Attorney-Client Privilege</u>[5]

Under New Hampshire law, which provides the rules for privilege in this case, "[w]here legal advice of any kind is sought from a professional legal adviser in his capacity as such,

---

[5]In its memorandum, Textron combines the discussion of attorney-client privilege and the work product doctrine.  Because each theory protects different material based on different standards, each must be considered separately.

the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser unless the protection is waived by the client or his legal representatives." Prof'l Fire Fighters of N.H. v. N.H. Local Gov't Ctr., --- A.3d ---, 2012 WL 1649761, at *1 (N.H. May 11, 2012) (internal quotation marks omitted); see also N.H. R. Evid. 502.  A communication is confidential if it was not intended to be disclosed to third parties.  Prof'l Fire Fighters, 2012 WL 1649761 at *2.  On the other hand, the privilege may be waived if the otherwise protected information is disclosed to third parties.  See Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 24 (1st Cir. 2011).

   "A party claiming the attorney-client privilege bears the burden 'to establish that the privilege exists and covers the statements at issue.'" Kraft v. Mayer, 2011 WL 1884769, at *1 (D.N.H. May 18, 2011) (quoting United States v. Bisanti, 414 F.3d 169, 170 (1st Cir. 2005)).  Blanket claims of privilege are "extremely disfavored," and instead a party asserting privilege must establish its elements as to each disputed question.  In re Grand Jury Matters, 751 F.2d 13, 17 n.4 (1st Cir. 1984).  When an opposing party alleges that the privilege does not apply due to disclosure, the party claiming privilege bears the burden to show

nondisclosure.  <u>United States v. M.I.T.</u>, 129 F.3d 681, 686 (1st Cir. 1997).

Textron objects to several specific questions asked during Rupp's deposition.[6]  The Jenkses represent that counsel for Textron and Rupp invoked the attorney-client privilege during his deposition when they felt it applied and that Rupp did not provide any responses to the objected-to questions.  The Jenkses do not challenge Textron's objections during the deposition or argue that the privilege was invoked erroneously.  On other matters, they contend, Rupp answered questions without invoking the privilege.  The Jenkses argue that Textron has waived the privilege as to matters that were addressed and answered during Rupp's deposition.

The specific questions that Textron raises in its motion are addressed as follows.

1.  "What information did you have at that time [when notified of the Hall accident], if any, that E-Z-GO had attempted or evaluated in any way the effectiveness of warning placed on the TXT golf cart up until the time of the Hall accident?"

Counsel for Textron objected to the question.  Counsel for

---

[6]Only the questions discussed in the section of Textron's memorandum asserting attorney-client privilege are addressed. Textron also cited several questions in the background section of the memorandum as examples of improper questions.

the Jenkses rephrased the question, which was answered without objection.

Because Rupp did not answer the objected-to question and the Jenkses do not contest the validity of the objection, it appears that the parties agree that the question is barred by the privilege.  Textron did not object to the rephrased question, which Rupp answered.  Therefore, Textron has waived the attorney-client privilege as to the answer to the second question.

2.  "How did the decision come about to put a warning on the back?"

Rupp was allowed to answer over a general objection.  That part of the answer that references the NGCMA does not implicate attorney-client privilege.  When Rupp mentioned discussing a warning with Textron employees, counsel objected and instructed him not to answer.  In response to the follow-up question, Rupp invoked the attorney-client privilege.  Therefore, to the extent the answer might have involved privileged information, no answer was given, and the Jenkses have not challenged the privilege as it was invoked during the deposition.

3.  "As of July 23, 2003, what research had E-Z-GO done, if anything, to find out whether people were climbing on the back of its two-seater golf cars?"

Counsel for Textron objected and instructed Rupp not to answer.  Counsel for the Jenkses then asked other questions that Rupp answered without objections.  Again, the Jenkses do not challenge the invocation of the privilege as to that question.

4.  "Do you know why E-Z-GO decided to put a warning on the back?"

Rupp answered: "My involvement in that was in connection with my role as a litigator for the company providing legal advice."  Counsel then went off the record.  When the deposition resumed, counsel for the Jenkses asked questions on a different topic without objections.  The Jenkses do not contest Rupp's invocation of the attorney-client privilege.

Rupp's communications with third-parties, such as Pinnie, members of the Hall family, and representatives of the CPSC and other organizations, are not confidential and are not protected by attorney-client privilege.  To the extent Textron argues that Rupp's testimony generally is protected by attorney-client privilege, Textron's invocation of the privilege is not sufficiently specific to allow the court to make rulings.  Similarly, Textron's argument that Rupp's testimony is likely to lead to matters protected by the attorney-client privilege is not asserted with sufficient specificity to allow a ruling.

B.  <u>Work Product Doctrine</u>

     Textron contends that Rupp's mental impressions,
conclusions, and opinions related to the effectiveness of
warnings on the E-Z-Go car before the Hall accident, to Textron's
investigation in response to the Hall accident, and to Textron's
eventual decision to add a warning to the rear of the cars are
all protected attorney work product.  In support, Textron asserts
that Rupp is a "litigator" and that all of his work is done in
anticipation of litigation.  Textron also argues that Rupp's work
in response to the Hall accident was in anticipation of
litigation by the Hall family.

     In federal court, federal law provides the standard for
protection under the work product doctrine.  <u>See</u> <u>Precision</u>
<u>Airmotive Corp. v. Ryan Ins. Servs., Inc.</u>, 2011 WL 148818, at *7
(D. Me. Jan. 17, 2011) (citing <u>S.D. Warren Co. v. E. Elec. Corp.</u>,
201 F.R.D. 280, 282 (D. Me. 2001)); <u>Galvin v. Pepe</u>, 2010 WL
2720608, at *2 (D.N.H. July 8, 2010).  The work product doctrine
protects "materials prepared for use in litigation, whether the
litigation was underway or merely anticipated."  <u>United States v.</u>
<u>Textron Inc.</u>, 577 F.3d 21, 29 (1st Cir. 2009).  The protection
extends to an attorney's "mental impressions, conclusions,
opinions, or legal theories" along with "fact work product."

23

<u>Vicor Corp. v. Vigilant Ins. Co.</u>, 674 F. 3d 1, 18 (1st Cir. 2012)
(internal quotation marks omitted).

The attorney work-product doctrine, however, does not
provide a blanket protection for every act or thought by an
attorney who anticipates litigation.  <u>In re San Juan Dupont Plaza
Hotel Fire Litig.</u>, 859 F.2d 1007, 1015-16 (1st Cir. 1988).  The
party asserting protection under the work product doctrine bears
the burden of showing that it applies.  <u>In re Grand Jury
Subpoena</u>, 220 F.R.D. 130, 140 (D. Mass. 2004).

In this case, Textron seeks, generally, to protect Rupp's
mental impressions, conclusions, opinions, and legal theories
related to the Hall accident and to Textron's processes in
deciding whether to provide a warning.[7]  Textron argues that
those matters were arrived at in anticipation of litigation by
the Hall family.[8]  As presented in the motion, Textron has not

---

[7]Textron has not offered a theory under which the work
product doctrine would operate in this case to protect Rupp's
work done in anticipation of litigation by the Halls.  <u>See, e.g.</u>,
<u>Planalto v. Ohio Cas. Inc. Co.</u>, 256 F.R.D. 16, 20 (D. Me. 2009).

[8]Although Mark Pinnie, acting on behalf of the Hall family,
told Textron that the family did not intend to bring suit but
instead asked Textron to provide a warning on the back of its E-
Z-Go cars, Textron plausibly argues that Pinnie's later reference
to the statute of limitations supports its anticipation of
litigation.

carried its burden to show that particular matters are protected
attorney work product.

## C.   Additional Considerations

Alternatively, Textron asks that Rupp's testimony on certain
non-privileged and non-confidential topics be precluded due to
the risk of inadvertent disclosure of privileged information, the
strain on the attorney-client relationship, prejudice due to
assertions of privilege, and repetitive testimony.   In support,
Textron asserts that as counsel for Textron, Rupp's testimony
would be disfavored and would likely prejudice Textron's defense.

Textron primarily argues that Rupp is representing Textron
in this litigation as its trial counsel, and therefore, Rupp
should not have been deposed.[9]   As demonstrated by the docket,
Textron is represented by attorneys from the firm of Goldberg
Segall LLP and Gallagher Callahan & Gartrell PC.   Rupp has not
entered an appearance in this case.   Therefore, Rupp is not
representing Textron as trial counsel.

Textron argues that Rupp should not testify at trial because
"attempts by Textron's counsel at trial to protect privileged and

---

[9]Textron does not indicate that it objected to Rupp's
deposition on this basis.   In any case, the deposition was done,
and the pertinent issue now is trial testimony.

confidential information will risk prejudice to Textron through
what is sure to be constant objections and assertions of
privilege."  Textron raises concern about the admissibility of
Rupp's testimony on the ground that he was asked at his
deposition about matters on which he lacks personal knowledge.
Because Federal Rule of Evidence 602 precludes testimony about
matters on which a witness lacks personal knowledge, such
testimony would not be admissible.

D.   Summary

     The privilege and work product protections raised by Textron
cannot be resolved completely based on the parties' filings to
date.  Repetitive objections at trial would cause unnecessary
delay and risk causing unfair prejudice to Textron.  Therefore,
these matters should be resolved before trial begins.

     To that end, counsel for the Jenkses and counsel for Textron
shall use their best efforts to resolve any remaining dispute on
the application of privilege and work product protection to
Rupp's testimony as follows.

     1.   In accord with the protections provided by attorney-
client privilege and the work product doctrine and the other
evidentiary rulings in this order, counsel for the Jenkses shall

prepare a list of specific questions that they intend to ask Rupp
at trial and provide the list to counsel for Textron.

2.   Textron shall respond by indicating whether it asserts
attorney-client privilege or attorney work-product protection as
to each question and provide the response to counsel for the
Jenkses.

3.   Counsel shall meet and discuss any remaining issues with
respect to Rupp's anticipated testimony.  If counsel fail to
resolve any issues that they have identified, they shall file a
joint statement listing those questions as to which they are
unable to resolve the dispute and their respective positions.

Given the proximity of trial, these issues must be resolved
on an expedited basis, as provided in the conclusion.  If
necessary, a hearing will be held, without the presence of the
jury, to decide these matters.

Once the issue of protected matters is resolved, counsel
shall carefully tailor their examination of Rupp to avoid
inadmissible information.  Textron is put on notice that
attorney-client privilege and the work-product doctrine cannot be
used as both a shield and sword.  Textron must be vigilant that
its own questions do not open the door to information that would
otherwise be protected.  Should Textron's questions to Rupp

27

result in revealing otherwise protected information, the Jenkses will be permitted to inquire into any area that has been exposed.

IV.   Subsequent Remedial Measures

Textron moves to exclude evidence pertaining to the warning added to Textron golf cars in 2008 and 2010 as evidence of subsequent remedial measures that is inadmissible under Federal Rule of Evidence 407.   The Jenkses assert that the subsequent warning is admissible under Rule 407 to impeach John Rupp's expected testimony about the lack of foreseeability of people riding on the back of golf cars and the feasibility of putting a warning on the back.   In support, the Jenkses contend that Rupp testified in his deposition that Textron tested a warning decal provided by Pinnie and that Textron concluded no warning was necessary or feasible.[10]

Rule 407 provides:

When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
• negligence;
• culpable conduct;
• a defect in a product or its design; or
• a need for a warning or instruction.
But the court may admit this evidence for another purpose, such as impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures.

_____

[10]Pinnie denies ever providing a warning decal to Textron.

28

By its terms, Rule 407 applies to measures taken after the
accident at issue in the case, not to measures undertaken before
the accident occurred.   <u>Trull v. Volkswagen of Am., Inc.</u>, 187
F.3d 88, 96 (1st Cir. 1999).

Rule 407 precludes evidence of the warnings provided on the
2008 and 2010 E-Z-Go cars to show the need for a warning.
Textron admits that it was feasible to put a warning on the back
of its cars.  The Jenkses argue that the 2008 and 2010 warnings
are admissible to impeach Textron witnesses who have testified
about Textron's knowledge of misuse of its cars and Textron's
investigation in response to the Hall accident.  The Jenkses also
argue that the evidence is admissible to show feasibility and
because the jury is entitled to consider all relevant evidence.

The Jenkses argument about Textron's knowledge of misuse of
its cars and Textron's response to the Hall accident does not
appear to be related to the effect of Rule 407 on evidence of the
later warnings.  Most of the evidence and testimony that the
Jenkses recount is about events that occurred before Rod Jenks's
accident, making Rule 407 inapplicable to that evidence.
Although the Jenkses argue that the evidence of subsequent
warnings could be used to impeach some of Textron's witnesses,
they have not shown a sufficient connection to employ the

29

exception to Rule 407.  As counsel for the Jenkses is well aware, not all relevant evidence is admissible.

Unless Textron opens the door to one of the exceptions under Rule 407, evidence of the warnings applied to E-Z-Go cars in 2008 and 2010 is barred by Rule 407.

## Conclusion

For the foregoing reasons, Textron's motion to preclude evidence of the Hall accident (document no. 185) is denied; Textron's motion to preclude evidence of the CPSC report and investigation (document no. 184) is granted as to the CPSC report itself and denied as to evidence of Textron's reaction to the CPSC investigation; Textron's motion to limit or preclude the testimony of John Rupp (document no. 180) is denied without prejudice at this time, subject to further rulings on privilege and work product; and Textron's motion to exclude evidence of subsequent remedial measures (document no. 177) is granted.

## Schedule for Privilege and Work Product Dispute

Counsel for the Jenkses shall provide the questions that they intend to ask Rupp at trial, as directed in this order, to counsel for Textron **on or before NOON on July 9, 2012.**

Counsel for Textron shall provide its response to counsel for the Jenkses **on or before NOON on July 11, 2012.**

Counsel shall confer about the privilege and work product issues and resolve any disputes that remain.

If counsel are unable to resolve all of their disputes, counsel shall prepare and file with the court a joint statement, as specified in this order, **on or before FIVE O'CLOCK p.m. on July 13, 2012.**


        SO ORDERED.

                                    _____
                                    Joseph A. DiClerico, Jr.
                                    United States District Judge

July 6, 2012

cc:  R. Matthew Cairns, Esquire
     James M. Campbell, Esquire
     R. Peter Decato, Esquire
     Samantha Dowd Elliott, Esquire
     Mark V. Franco, Esquire
     Neil A. Goldberg, Esquire
     Kathleen M. Guilfoyle, Esquire
     Daniel R. Mawhinney, Esquire
     David S. Osterman, Esquire
     Christopher B. Parkerson, Esquire
     Elizabeth K. Peck, Esquire
     Michael D. Shalhoub, Esquire
     William A. Whitten, Esquire

                     31